JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Warren Clark Miller, appeals the judgment of the trial court granting the motion for summary judgment of defendants-appellees Key Bank National Association, Key Trust Co. of Ohio, N.A., Key Wealth Management and McDonald Financial Group (collectively referred to as "Key Bank") and the motion for summary judgment of defendants-appellees Daniel and Tracey Mazany and Victor and Joan Fontana, and denying his motion for summary judgment against the defendants-appellees. For the reasons that follow, we affirm.
 BACKGROUND 1. The Trusts {¶ 2} Appellant's father, Clark O. Miller, amassed significant wealth during his lifetime, which he left to his wife, appellant's mother, June E. Miller, upon his death in 1995. A portion of the money Mrs. Miller inherited from Mr. Miller was held in trust (the "Clark trust"). After Mr. Miller's death, on June 25, 1996, Mrs. Miller established her own separate trust (the "June trust"), in which she had a vested interest and which designated appellant, her and Mr. Miller's sole issue, and appellant's children[1] as the primary beneficiaries[2] upon her death. Key Bank was the trustee of the June trust. The June trust initially provided appellant the right to remove Key Bank as trustee during any period of time when Mrs. Miller was unable to properly manage her financial affairs.
 {¶ 3} The June trust further provided that the bank "shall distribute to [Mrs. Miller] and/or use for [her] benefit such amounts of the net income and/or principal of the Trust Estate in such manner as [she] may from time to time direct." The June trust also provided that Mrs. Miller reserved the right to add additional property to the trust and to modify or revoke the terms of the trust.
 {¶ 4} On February 27, 1997, Mrs. Miller made her first modification to her trust. The modification designated appellant as trust advisor. Pursuant to the terms of the June trust, the trust advisor was to be appointed under the following circumstances:
 {¶ 5} "After my death or during any period of time when, in the judgment of the Trustee, I am so incapacitated that I am unable to manage my financial affairs properly * * *."
 {¶ 6} The terms of the trust also provided that Key Bank obtain the written approval of the trust advisor, if appointed, for any investments and/or changes in the trust.
 {¶ 7} On September 19, 2000, Mrs. Miller made a second modification to her trust, thereby removing all provisions relative to the trust advisor. The modification, however, provided that appellant had the power to remove and replace the trustee after her death or if she became unable to properly manage her financial affairs.
 {¶ 8} On April 23, 2001, Mrs. Miller made a third and final modification to her trust. That modification removed appellant's right to remove Key bank as trustee altogether and provided that Key Bank could only be relieved as trustee by its own voluntary resignation after Mrs. Miller's death.
 2. Daniel and Tracey Mazany Victor and Joan Fontana {¶ 9} Tracey Mazany, a licensed practical nurse (LPN), employed by the Visiting Nurses Association ("VNA"), provided home health care to Mr. Miller before he passed away. After Mr. Miller's death, Tracey left her job with the VNA and was hired by Mrs. Miller as a "household employee." During the course of her employment with Mrs. Miller, Tracey accepted in excess of $70,000 from Mrs. Miller without consideration. Daniel Mazany is Tracey's husband and benefitted from much of the money Tracey received from Mrs. Miller.
 {¶ 10} Victor and Joan Fontana are Tracey's parents. They received checks totaling $50,000 from Mrs. Miller, which they turned over to a mortgage company for a down payment on a house for Daniel and Tracey. The mortgage company Tracey and Daniel were dealing with would only consider a down payment from a family member, hence the Fontana's involvement.
 3. Mrs. Miller {¶ 11} At the time of her death in May 2002, Mrs. Miller had Alzheimer's disease, for which she had been receiving treatment since 1999. Prior to her death, on April 13, 2001, Mrs. Miller met with her attorney[3] and the vice president of Key Bank, Jill Dugovics, to express her desire to change her estate planning. Specifically, Mrs. Miller expressed her desire to leave more money to her grandchildren and less to appellant. During the course of that meeting, Mrs. Miller also disclosed the gifts she had given to Tracey.
 {¶ 12} In order to increase the amount her grandchildren would receive upon her death, Mrs. Miller transferred money at her disposal in the Clark trust to her trust. The Clark Trust left more money to appellant than to the grandchildren (i.e., appellant was to receive 75% of the Clark trust, as opposed to 50% of the June trust). In May 2001, Mrs. Miller's attorney and Key Bank effectuated the changes Mrs. Miller desired.
 4. Appellant's Claims {¶ 13} Appellant maintains that Key Bank failed to consult with him, as trust advisor, in violation of the June terms of the trust. He contends that Mrs. Miller was not competent to make the second and third modifications to her trust or the May 2001 transfer from the Clark trust to the June trust. In regard to the transfer, appellant also argues that Key Bank failed to discuss with Mrs. Miller its $38,000 transfer fee and the tax consequences for Mrs. Miller. Moreover, appellant contends that Key Bank was negligent in its conduct relative to the Mazany transactions. Thus, appellant asserted the following claims against Key Bank: 1) negligence, 2) breach of fiduciary duty, 3) intentional interference with an expectancy of inheritance, 4) unjust enrichment and 5) fraud. Appellant also sought punitive damages against Key Bank.
 {¶ 14} In regard to the Mazanys and Fontanas, appellant asserted claims for conversion and unjust enrichment. In addition to the conversion and unjust enrichment claims, appellant also alleged claims of intentional interference with an expectancy of inheritance and fraud against Tracey and sought punitive damages against her.
 SUMMARY JUDGMENT STANDARD {¶ 15} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come but to one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v.Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1, 433 N.E.2d 615;Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,364 N.E.2d 267.
 {¶ 16} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987),477 U.S. 317, 330, 106 S.Ct. 2548; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115, 526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 604 N.E.2d 138.
 {¶ 17} In Dresher v. Burt (1996), 75 Ohio St.3d 280,662 N.E.2d 264, the Supreme Court of Ohio modified and/or clarified the summary judgment standard as applied in Wing v. AnchorMedia, Ltd. of Texas (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Dresher, at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 18} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. of Commrs.
(1993), 87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. The motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul (1990),71 Ohio App.3d 46, 50, 593 N.E.2d 24; Link v. Leadworks Corp.
(1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140.
 {¶ 19} Because our review of summary judgment is de novo, we will give no deference to the decision of the trial court and review the circumstances of the case and the record before us on appeal independently. As will be discussed in turn, applying the above standard to the claims asserted against appellees, all of which were dismissed via summary judgment, we find that the trial court properly determined there were no issues of material fact and appellees were entitled to judgment as a matter of law.
 STANDING {¶ 20} Appellees contend that appellant did not have standing to bring suit. Appellant, however, argues that as trust advisor he was in privity with Key Bank, he was a real party in interest, and he has a vested interest in the June trust and, hence, had standing to sue. The trial court summarily granted appellees' motion for summary judgment and denied appellant's motion for summary judgment without stating its grounds. As will be discussed below, we find that appellant's claims fail on the merits. Thus, as standing is not the pivotal issue in this appeal, we decline to address it.
 DR. JAMES SILVERBLATT'S DEPOSITION TESTIMONY {¶ 21} Before considering the merits of appellant's claims, we address the propriety of considering Dr. Silverblatt's deposition testimony.
 {¶ 22} On November 10, 2004, the trial court ordered that appellees' dispositive motions were to be filed by January 7, 2005, that appellant's brief in opposition was to be filed by February 7, 2005, and that appellees' replies were to be filed by February 15, 2005. The parties filed their briefs in accordance with the court's order. Appellant, however, did not file the deposition testimony of Dr. Silverblatt until April 7, 2005, with the notation "for use at trial." Appellant relied on Dr. Silverblatt's testimony in his briefs in opposition to appellees' motions for summary judgment. In its reply brief, Key Bank objected to appellant's reliance upon Dr. Silverblatt's testimony. Appellees now request that this court not consider the deposition as being part of the record.
 {¶ 23} Although appellant filed Dr. Silverblatt's deposition in an untimely manner for the purpose of consideration of his motion for summary judgment and opposition to appellees' motions for summary judgment, we find that even considering said testimony, as will be discussed in more detail below, it does not raise genuine issues of material fact and appellees were entitled to judgment as a matter of law.
 NEGLIGENCE AND BREACH OF FIDUCIARY DUTY {¶ 24} Appellant's claims of negligence and breach of fiduciary duty were against Key Bank. In particular, appellant claims that Key Bank was negligent and breached its fiduciary duty to Mrs. Miller by executing the modifications to the June trust, the transfer of funds from the Clark trust to the June trust, and by failing to consult with him as trust advisor, all when Mrs. Miller was incompetent.
 {¶ 25} "[I]n order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom. Di Gildo v. Caponi
(1969), 18 Ohio St.2d 125, 247 N.E.2d 732; Feldman v. Howard
(1967), 10 Ohio St.2d 189, 226 N.E.2d 564. Thus, the existence of a duty is fundamental to establishing actionable negligence. "If there is no duty, then no legal liability can arise on account of negligence. Where there is no obligation of care or caution, there can be no actionable negligence." (Footnotes omitted.) 70 Ohio Jurisprudence 3d (1986) 53-54, Negligence, Section 13. Only when one fails to discharge an existing duty can there be liability for negligence. See Di Gildo, supra, at 127.
 {¶ 26} The elements of breach of fiduciary duty are: "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom." Harwood v. Pappas Assoc., Inc.,
Cuyahoga App. No. 84761, 2005-Ohio-2442, at ¶ 26, citing Strockv. Pressnell (1988), 38 Ohio St.3d 207, 216, 527 N.E.2d 1235.
 {¶ 27} It is important to note that Key Bank's duty was to Mrs. Miller and/or the trust, not appellant, who has brought action in his individual capacity, rather than as executor of Mrs. Miller's estate. That notwithstanding, appellant failed to establish that Key Bank breached the duty it owed to Mrs. Miller. In support of its motion for summary judgment, Key Bank submitted the affidavit of Dugovics, who was primarily responsible for handling the June trust. Dugovics averred that the checks Mrs. Miller wrote to Tracey were not issued from the June trust; they came from two different checking accounts Mrs. Miller maintained, over which the trust had no control. Dugovics further averred that she first learned of the gifts from Mrs. Miller to Tracey at the April 13, 2001 meeting she had with Mrs. Miller and Mrs. Miller's attorney. Dugovics explained that it was at that meeting that Mrs. Miller informed her that she had been diagnosed with a mild case of Alzheimer's disease. Dugovics averred that she had no cause to question Mrs. Miller's competency, and described Mrs. Miller as "lucid and knew what she was doing at all times [she] dealt with her."
 {¶ 28} Dugovics explained that Mrs. Miller told her that appellant had been pressing her for money and that his requests were difficult for her because she loved appellant but did not like him. It was for that reason that Mrs. Miller had arranged the April 13, 2001 meeting and subsequently transferred funds from the Clark trust to the June trust, so that appellant would receive less from her estate and her grandchildren would receive more. Dugovics also averred that Mrs. Miller told her on several occasions that she thought of Tracey like a daughter. Dugovics stated that Mrs. Miller did not make any further gifts to Tracey after April 13, 2001.
 {¶ 29} Dugovics also averred that in December 2001 she worked with appellant with respect to paying off his mortgage using funds from the June trust. Dugovics explained that the payoff of appellant's home, as well as a monthly allowance to him, were put in place by Mrs. Miller in an attempt to end his repeated requests for money. Dugovics stated that while working with appellant in December 2001 to pay off his mortgage and set up his monthly allowance, he never raised any concerns relative to his mother's mental health.
 {¶ 30} In opposition to Key Bank's motion for summary judgment, appellant submitted the affidavit of John L. Hoffer, an estate planning attorney, who reviewed Dr. Silverblatt's deposition testimony and concluded "that at least from the date of 4-13-2001, Key had notice that Mrs. Miller had been diagnosed as having alzheimer's disease * * *."
 {¶ 31} Dr. Silverblatt, an internist, treated Mrs. Miller from 1998 through August 2001. He testified that he had some concern about cognitive impairment on the part of Mrs. Miller and in August 2001, he wanted Mrs. Miller to seek evaluation from a psychiatrist to determine whether she was mentally incompetent. Dr. Silverblatt testified that he did not see Mrs. Miller frequently enough to know how she was on any particular day and that an Alzheimer's patient can be more "with it" some days than others. Dr. Silverblatt further testified that he never alerted anyone to his concerns about Mrs. Miller other than Tracey and one of Mrs. Miller's granddaughters, either of whom usually accompanied Mrs. Miller to her appointments.
 {¶ 32} Appellant testified at deposition that during the time in question, he accepted large gifts from his mother and that he would not have accepted the gifts if there were any question in his mind that his mother did not know what she was doing. Indeed, months after the last gift to Tracey in April 2001, appellant accepted, in December 2001, Mrs. Miller's pay-off of his mortgage and monthly allowance for him.
 {¶ 33} Upon review, we find that appellant has failed to demonstrate that Key Bank breached any duty it owed to Mrs. Miller.
While Key Bank was aware of Mrs. Miller's condition at the time of the third modification of the June trust and the transfer of funds from the Clark trust to the June trust, there is no evidence that she was legally incompetent. Hoffer, an attorney, was unable to offer an opinion on Mrs. Miller's competency. Dr. Silverblatt, an internist, deferred making a diagnosis and referred Mrs. Miller to a specialist for a diagnosis.[4]
Moreover, there were no more gifts to Tracey after the April 13, 2001 meeting when Key Bank learned of Mrs. Miller's condition. As such, the trial court properly granted summary judgment in favor of Key Bank and against appellant on his negligence and breach of fiduciary duty claims.
 INTENTIONAL INTERFERENCE WITH AN EXPECTANCY OF INHERITANCE {¶ 34} As previously mentioned, appellant asserted claims of intentional interference with an expectancy of inheritance against Key Bank and Tracey. The tort of interference with an expectancy of inheritance was recognized by the Supreme Court of Ohio in Firestone v. Galbreath (1993), 67 Ohio St.3d 87,616 N.E.2d 202, which set forth the elements as follows:
 {¶ 35} "Elements of [the] tort of intentional interference with expectancy of inheritance are: existence of expectancy of inheritance in plaintiff; intentional interference by defendant with that expectancy of inheritance; conduct by defendant involving interference which is tortious, such as fraud, duress or undue influence, in nature; reasonable certainty that expectancy of inheritance would have been realized, but for interference by defendant; and damage resulting from interference." Id. at 203.
 {¶ 36} By appellant's own admission, he had no idea what, if anything, he was going to inherit; his mother never promised him anything; and he understood that she could have spent all of the money and he would not have been entitled to anything. Thus, there was no genuine issue of material fact as to the first element of intentional interference with an expectancy of inheritance claim and the trial court properly granted summary judgment in favor of Key Bank and Tracey and against appellant on the claim.
 FRAUD {¶ 37} Appellant's fraud claims were asserted against Key Bank and Tracey Mazany. The elements of fraud are:
 {¶ 38} "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."Gaines v. Preterm-Cleveland, Inc. (1987), 33 Ohio St.3d 54,514 N.E.2d 709, citing Burr v. Stark Cty. Bd. of Commrs. (1986),23 Ohio St.3d 69, 491 N.E.2d 1101, paragraph two of the syllabus;Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167, 462 N.E.2d 407.
 {¶ 39} In regard to Key Bank, appellant maintains that Dugovics had a duty to disclose what she learned at the April 13, 2001 meeting with Mrs. Miller and her attorney, and that her failure to disclose constitutes fraud. Appellant further maintains that Dugovics fraudulently failed to advise Mrs. Miller of the transfer fee for, and the adverse tax consequences of, the transfer of funds from the Clark trust to the June trust. We are not persuaded.
 {¶ 40} As appellant's argument relates to the discoveries made during the April 13, 2001 meeting, there is no evidence that Key Bank either made any false representations with the intent of inducing reliance on the representation or that there was any justifiable reliance on the part of another party to their detriment. In regard to the transfer fee and alleged adverse tax consequences, there is no evidence in the record that Mrs. Miller was unaware of the transfer fee or that there were adverse tax consequences. As such, the trial court properly granted summary judgment in favor of Key Bank and against appellant on his fraud claim.
 {¶ 41} Similarly, the trial court properly granted summary judgment in favor of Tracey and against appellant on the fraud claim. There is a lack of evidence to support the requirements that Tracey made any false representations with the intent of inducing reliance on the representation or that there was any justifiable reliance on the part of another party to their detriment. Appellant testified that not only was he not privy to any conversations Tracey had with Mrs. Miller about the gifts, but that Tracey "never made any statements to [him]." Thus, the trial court properly granted summary judgment in favor of Tracey and against appellant on his fraud claim.
 UNJUST ENRICHMENT {¶ 42} Appellant's claims of unjust enrichment were asserted against Key Bank, Tracey and Daniel Mazany and Victor and Joan Fontana. For the reasons discussed below, we find appellant's claims without merit.
 {¶ 43} Three elements comprise an unjust enrichment claim: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." Hambelton v. R.G. BarryCorp. (1984), 12 Ohio St.3d 179, 183, 465 N.E.2d 1298. Unjust enrichment is inapplicable to gifts or any officious act.Wendover Rd. Property Owners Assn. v. Kornicks (1985),28 Ohio App.3d 101, syllabus.
 {¶ 44} In regard to Key Bank, plaintiff alleged that the bank improperly paid its attorney fees in this case from the trust and, thus, has been unjustly enriched. It is well established, however, that a trustee qualified to act in that capacity is entitled to reasonable compensation for his services, chargeable to the trust for which he is trustee. In re Binder: Squire v.Emsley (1940), 137 Ohio St. 26, 27 N.E.2d 939.
 {¶ 45} Here, the trust specifically provided that the trustee may "employ and compensate such agents, accountants, legal counsel and investment counsel as the Trustee shall deem advisable to assist in the performance of its duties." A trustee acts for the benefit of the estate when it defends an action for the removal of the trustee or defends an attempt to modify the trust. Lin v. Gatehouse Constr. Co. (1992), 84 Ohio App.3d 96,616 N.E.2d 519.
 {¶ 46} As such, the trial court properly granted summary judgment in favor of Key Bank and against appellant on his unjust enrichment claim.
 {¶ 47} In regard to Daniel and Tracey Mazany and Victor and Joan Fontana, appellant alleged that they improperly retained and received the benefit of Mrs. Miller's property without exchange of consideration. The record demonstrates that Victor and Joan Fontana did not retain any of Mrs. Miller's funds; rather, they turned the money over for Daniel and Tracey's purchase of a home. The record further demonstrates that appellant did not confer any benefit to Daniel and Tracey. His own testimony was that he did not have any information or involvement relative to Mrs. Miller giving money to Daniel and Tracey Mazany. Accordingly, the trial court properly granted Daniel and Tracey Mazany's and Victor and Joan Fontana's motions for summary judgment against appellant's unjust enrichment claim.
 CONVERSION {¶ 48} Conversion has been defined as "the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." Joyce v. General Motors Corp.
(1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172.
 {¶ 49} Appellant's claims for conversion were against Daniel and Tracey Mazany and Victor and Joan Fontana. We find them to be without merit. Appellant had no ownership rights in Mrs. Miller's property. Moreover, the mere receipt of funds does not demonstrate a "wrongful exercise of dominion" by the recipient; there must be some affirmative act on the part of the defendant.Ohio Tel. Equip, Sales, Inc. v. Hadler Realty Co. (1985),24 Ohio App.3d 91, syllabus. Additionally, in regard to Victor and Joan Fontana, the funds are no longer in their possession or control. As such, the trial court properly granted summary judgment in favor of Daniel and Tracey Mazany and Victor and Joan Fontana and against appellant on the conversion claims.
 PUNITIVE DAMAGES {¶ 50} In order for a plaintiff to be entitled to punitive damages, there must be proof of an underlying independent compensatory damage claim. Moskovitz v. Mt. Sinai Medical Ctr.
(1994), 69 Ohio St.3d 638, 635 N.E.2d 331. As appellant failed to demonstrate an underlying independent compensatory damage claim against Key Bank and Tracey, the parties against whom his punitive damages claim was asserted, the trial court properly granted summary judgment in their favor and against appellant on the claims.
 CONCLUSION {¶ 51} The trial court properly granted summary judgment in favor of appellees and against appellant on all appellant's claims.
Judgment affirmed.
It is ordered that appellees recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J., and Corrigan, J., concur.
[1] The grandchildren were named as defendants "needed for just adjudication." Appellant did not assert any claims against them. They were dismissed by the court when it granted appellees' motions for summary judgment and denied appellant's motion for summary judgment.
[2] Mrs. Miller also named appellant's two ex-wives as beneficiaries.
[3] Mrs. Miller's attorney and his law firm were also named as defendants in this action, but were dismissed by appellant.
[4] Mrs. Miller apparently refused the referral.