[Cite as *Thomas v. Kramer*, 194 Ohio App.3d 70, 2011-Ohio-1812.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95791**

# THOMAS, EXR., ET AL.,

## Appellants,

v.

# KRAMER, Appellee, et al.

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-699449

**BEFORE:**     Sweeney, P.J., Cooney, J., and Rocco, J.

**RELEASED AND JOURNALIZED:**     April 14, 2011

Law Offices of Michael Cretella, L.L.C., and Michael Cretella; Kathleen O. Tatarsky; and Sean Gregor, P.L.L.C., and Sean C. Gregor, for appellants.

Haber, Polk & Kabat, L.L.P., Richard C. Haber, and Bradley J. Barnes; and Joel I. Newman, for appellee.

JAMES J. SWEENEY, Presiding Judge.

{¶ 1} Plaintiffs-appellants Laurel Thomas, individually and as executor of the estate of Craig Thomas, and MTI Computer Services, Inc., appeal the court's granting of summary judgment to defendant-appellee Edward G. Kramer in this case alleging attorney misconduct. After reviewing the facts of the case and pertinent law, we affirm.

{¶ 2} In 1992, Laurel and her husband Craig retained defendant, who is an attorney, to handle the legal end of purchasing MTI, a computer maintenance and service company. Defendant had previously represented Laurel in the 1980s in a civil-rights action against her former employer.

{¶ 3} According to plaintiffs, defendant was paid $25,000 in 1992 for his legal services involving MTI's acquisition. Defendant denies this, alleging that he and Craig discussed giving defendant a 15 to 25 percent share in MTI in lieu of payment for legal services because Craig had no money to pay defendant at the time. According to

defendant, however, he never received this equity interest; instead, he was placed on MTI's board of directors.

{¶ 4}　According to plaintiffs, numerous checks were written to defendant from 1993 to 1998 totaling $365,000.[1]　Plaintiff argues that these were loans that defendant never repaid.

{¶ 5}　According to defendant, however, MTI owed him about $125,000 for the services that he had rendered in negotiating the sale of MTI. He stated:

{¶ 6}　"Craig didn't want to have me submit a bill for that because it would effect his bottom line.　So when I needed some money, he agreed to loan the money to me at interest and I agreed to do that since I was going to get money for services that I had rendered * * *."

{¶ 7}　On February 16, 1999, an attorney representing MTI sent defendant a letter captioned "Reciprocal Accounts Due."　The letter stated that defendant recently invoiced MTI $44,213.64 "for legal services rendered from 1991 to date."　The letter also stated that defendant owed MTI $88,616.90, consisting of an $85,000 personal loan to defendant and $3,616.90 for services MTI rendered to defendant.　According to the letter, MTI was willing to credit the amount defendant was owed for legal services

---

[1]Although plaintiffs argue that "[i]n all, corporate records and bank checks indicate that a sum of $365,000 was loaned to [defendant] during the time he performed legal services for appellants," the loans plaintiffs identify total $415,000.

against defendant's debt. MTI proposed that the parties agree to "specific payment terms" and that defendant "execute a promissory note to [MTI] for the amount due."

{¶ 8} In 2000, defendant was removed from MTI's board of directors. Defendant alleges that Craig canceled the amount due on the loans in exchange for defendant giving up his 15 to 25 percent interest in MTI.

{¶ 9} On February 17, 2007, Craig passed away. Laurel was appointed executor of his estate, and she took over as CEO of MTI.

{¶ 10} In March 2008, Laurel allegedly became aware of the money MTI had paid to defendant. Laurel contacted an attorney who represented MTI to investigate. At that time, defendant was representing Craig's estate in a civil lawsuit. In February 2009, Laurel terminated this representation.

{¶ 11} On July 22, 2009, plaintiffs filed suit against defendant, alleging attorney misconduct. On August 31, 2010, the court granted summary judgment for defendant, finding that the one-year statute of limitations for legal malpractice began to run in March 2008 and that the claim was thus time-barred. The court also found that the statute of limitations had run for "any claims for breach of fiduciary duty * * *, as defendant ceased to be a member of the corporate board in 2000." Additionally, the court found that plaintiffs did not "properly plead a claim of breach of oral contract," as all allegations "involve[d] alleged payment of money to defendant while in his capacity as counsel for the plaintiff corporation which would be part [of] any claim for legal malpractice which has already been found to be barred."

{¶ 12} Plaintiffs appeal and raise three assignments of error for our review, the first of which states as follows:

{¶ 13} "I. The trial court erred in granting appellee's motion for summary judgment where genuine issues of material fact exist with regard to when the attorney-client relationship ended."

{¶ 14} Appellate review of summary judgment is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. The Ohio Supreme Court stated the appropriate test in *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201, as follows:

{¶ 15} "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274."

{¶ 16} Pursuant to R.C. 2305.11(A), a one-year statute of limitations applies to legal-malpractice claims. The Ohio Supreme Court explained the accrual date for a legal-malpractice action in *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d

54, 58, 538 N.E.2d 398. "[A]n action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later."

{¶ 17} The "discovery rule" turns on the factual question of a cognizable event, which includes making the following determinations: "when the injured party became aware of, or should have become aware of, the extent and seriousness of [the injury]; whether the injured party was aware, or should have been aware, that such condition was related to a specific professional [legal] service previously rendered * * *; and whether such condition would put a reasonable [client] on notice of the need for further inquiry as to the cause of such condition." Id. at 57, citing *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204.

{¶ 18} This court has held that "the 'termination rule' turns on the factual question of whether there was an 'affirmative act by either the attorney or the client that signals the end of the relationship.'" *N. Shore Auto Sales, Inc. v. Weston, Hurd, Fallon, Paisley & Howley, L.L.P.*, Cuyahoga App. No. 86332, 2006-Ohio-456, ¶ 16, quoting *Mastran v. Marks* (Mar. 28, 1990), Suppit App. No. 14270. The phrase "particular transaction or undertaking" limits the termination rule and avoids a standard based on continuous representation. Otherwise, the statute of limitations could be defeated "where, for

example, a client with knowledge of the attorney's malpractice may unduly perpetuate the attorney's potential liability and exposure to suit." *Omni-Food & Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385, 388, 528 N.E.2d 941. See also *Slavens v. Spetnagel* (July 26, 1996), Jackson App. No. 95CA769 (holding that a "particular transaction" in the context of legal malpractice "encompasses all dealings related to the proceeding in which the alleged malpractice occurred that are not of a general nature"). Although there are three plaintiffs in the case at hand—Laurel individually, Laurel as executor of her late husband's estate, and MTI—the alleged misconduct concerns the attorney-client relationship between defendant and MTI. At deposition, Laurel conceded that the allegations of misconduct did not involve her personally or the estate. Therefore, we focus our analysis on defendant's representation of, and relationship with, MTI, as a corporate entity, rather than Laurel Thomas. "A corporation is an entity separate and apart from the individuals who compose it; it is a legal fiction for the purpose of doing business." (Emphasis omitted.) *Agley v. Tracy* (1999), 87 Ohio St.3d 265, 268, 719 N.E.2d 951.

{¶ 19} In the instant case, the court found that, "pursuant to [Laurel's] own testimony, the events of March 2008 qualify as a cognizable event," which triggered the statute of limitations. Based on this finding, the court granted defendant summary judgment on plaintiffs' legal-malpractice claim.

{¶ 20} Laurel testified in her deposition that she first became concerned about defendant owing money to MTI in March 2008. However, our review of the record

shows that MTI was "concerned" about defendant's debt long before Laurel became aware of the situation. MTI was aware that checks were allegedly written to defendant from 1992 through 1998, as MTI was a party to the transactions.

{¶ 21} To the extent that defendant's alleged misconduct was the failure to pay his debt to MTI, this too was uniquely within MTI's scope of knowledge. In other words, MTI discovered, or should have discovered, the injury when defendant failed to pay back money MTI loaned him.

{¶ 22} There is no evidence in the record concerning the terms of the loans or payments, if any, made by defendant. However, on February 16, 1999, MTI attempted to collect at least a portion of defendant's debt, specifically mentioning that defendant owed MTI $85,000 as the result of a personal loan. This is a cognizable event that triggered the statute of limitations for a legal-malpractice claim. To hold that the cognizable event was Laurel's discovery of defendant's failure to pay MTI would circumvent the statute of limitations. Corporations, and the individuals who run them, would be able to dodge statute-of-limitations accrual dates simply by replacing corporate officers.

{¶ 23} Accordingly, we conclude that under the discovery rule, the statute of limitations for legal malpractice in this case began to run on February 16, 1999, which is when there is evidence to support MTI's knowledge of defendant's misconduct. We now turn to the accrual date under the second prong of the *Zimmie* test—the termination

rule or "when the attorney-client relationship for that particular transaction or undertaking" terminated.

{¶ 24} It is undisputed that defendant sat on MTI's board of directors through 2000. However, there is no evidence in the record that defendant performed legal work for MTI after 2000, other than consulting on a limited number of employment-related issues that were being handled in New York. Laurel's deposition testimony is inconsistent about the time frame of defendant's involvement in MTI's employment cases, admitting that her "dates are a little blurry." Nonetheless, the latest date she remembered was "around" March 2008.

{¶ 25} Asked if she ever communicated to defendant that he was no longer performing legal services for MTI, Laurel replied, "Not to my knowledge."

{¶ 26} Defendant testified in deposition that he did not recall the date when he last represented MTI in a legal matter, although he remembered advising MTI regarding employment issues after Craig's death in February 2007. Defendant testified about two documents that are not part of the record on appeal: an invoice he sent to MTI on March 17, 2008, for legal services involving employment-discrimination matters and a letter he sent to MTI's accountant on September 15, 2008, indicating, for the purpose of an audit, that he was involved with MTI regarding employment-discrimination matters. According to defendant, he has no evidence of when his work on these matters terminated, but he believes that "there was no additional work that was done after September 15, 2008."

{¶ 27} Nonetheless, the dates of the employment-law representation are immaterial to plaintiffs' claims; we find defendant's sporadic involvement with MTI's employment-law matters to be a separate and distinct undertaking from the debt he amassed while on the board. To the extent that defendant's alleged malpractice involved money that he failed to repay to MTI, the attorney-client relationship for this "particular transaction or undertaking" terminated no later than 2000, when defendant was removed from the board of directors.

{¶ 28} The policy behind the statute of limitations in a legal-malpractice action, including the discovery and termination rules, is "to give the injured client adequate time to seek relief on the merits without undue prejudice to professional defendants due to stale claims." *Vail v. Townsend* (1985), 29 Ohio App.3d 261, 504 N.E.2d 1183, paragraph three of the syllabus. Furthermore, "conduct which dissolves the essential mutual confidence between attorney and client signals the termination of the professional relationship." *Brown v. Johnstone* (1982), 5 Ohio App.3d 165, 166, 450 N.E.2d 693. According to the record, MTI did not loan defendant money after 1998, it attempted to collect $85,000 in 1999, and it removed defendant from the board in 2000. Plaintiffs presented no evidence of an ongoing attorney-client relationship to toll the statute of limitations subsequent to these events.

{¶ 29} In summary, plaintiffs' claim for legal malpractice, which was filed in July 2009, is time-barred using both the discovery rule and the termination rule to determine the accrual date. Looking at the evidence in a light most favorable to plaintiffs, as we

must, there are no genuine issues of material fact. Plaintiffs' first assignment of error is overruled.

{¶ 30} In plaintiffs' second assignment of error, they argue as follows:

{¶ 31} "II. The trial court erred in granting appellee's motion for summary judgment when it found that appellants did not properly plead breach of oral contract separate and apart from their claim of legal malpractice."

{¶ 32} A legal-malpractice action may be predicated upon contract or tort, *Muir v. Hadler Real Estate Mgt. Co.* (1982), 4 Ohio App.3d 89, 90, 446 N.E.2d 820, and "the applicable statute of limitations is determined not from the form of pleading or procedure, but from the gist of the complaint." *Hibbett v. Cincinnati* (1982), 4 Ohio App.3d 128, 131, 446 N.E.2d 832. "Malpractice by any other name still constitutes malpractice." *Muir* at 90.

{¶ 33} In the instant case, the court found that plaintiffs' allegations involving the loans were part of the legal-malpractice claim, which was filed outside the statute of limitations. Plaintiffs' allegations of misconduct included "charging excessive fees," sitting on MTI's board while extracting loans from MTI, and "failing to exercise independent judgment while acting as counsel" to MTI. Plaintiffs fail to identify evidence in the record of excessive fees. Additionally, they do not identify any specific instances of "failing to exercise independent judgment" unrelated to the alleged loans.

{¶ 34} Assuming the only allegation of breach of contract involved the loans, this claim would still be barred by the applicable statute of limitations. There is no evidence

of a written contract between MTI and defendant involving loans or, for that matter, legal fees. Thus, we analyze whether there was a breach of an oral contract, which is subject to a six-year statute of limitations under R.C. 2305.07. Similar to the statute of limitations for a legal-malpractice claim, the statute of limitations for a breach-of-oral-contract claim begins to run when the cause of action accrues. When the subject of the oral contract is a loan, the accrual date is when the loan is due to be repaid, the lender requests payment, and the borrower fails to pay. *Dandrew v. Silver*, Cuyahoga App. No. 86089, 2005-Ohio-6355.

{¶ 35} Plaintiffs argue that MTI first demanded payment on June 17, 2009, when an attorney representing MTI sent a letter to defendant attempting to collect a debt. According to plaintiffs, defendant did not respond to this letter. This letter is not a part of the record on appeal.

{¶ 36} Defendant, on the other hand, argues that MTI first demanded payment in the February 16, 1999 letter MTI sent to defendant attempting to resolve the "reciprocal accounts due" between the parties. The letter refers to defendant's $85,000 loan from MTI, suggests that it be offset by an amount MTI owed defendant, and "propose[s] that [defendant] execute a promissory note to [MTI] for the amount due, with specific payment terms, as mutually agreed to by [defendant and MTI]."

{¶ 37} Plaintiffs argue that this 1999 letter was not a demand for payment. Rather, plaintiffs argue, it "suggested that a promissory note be finalized"; however, that

never happened. Plaintiffs also argue that, at best, the 1999 letter attempted to collect only a portion of the loans. Plaintiffs cite no legal authority to support these arguments.

{¶ 38} We find that the February 16, 1999 letter is an attempt to collect a debt, which is sufficient to trigger the statute of limitations for a breach-of-oral-contract claim. Plaintiffs filed their complaint more than six years after the accrual date for this cause of action. Accordingly, the court did not err by granting summary judgment to defendant under a breach-of-contract theory, and plaintiffs' second assignment of error is overruled.

{¶ 39} Plaintiffs' third and final assignment of error states the following:

{¶ 40} "III. The trial court erred in granting appellee's motion for summary judgment when it failed to address appellants' claim of unjust enrichment."

{¶ 41} Plaintiffs alleged unjust enrichment in their complaint using the following language:

{¶ 42} "As a result of the conduct of the Defendant Kramer, *the other Defendants became unjustly enriched*. All of the foregoing Defendants knew, or should have known, that Defendant Kramer was borrowing excessive amounts of money from MTI which were used to benefit all of the Defendants while he was representing the foregoing Plaintiffs." (Emphasis added.)

{¶ 43} Plaintiffs initially filed this action against three defendants—Edward Kramer and two of his former law partners. On February 2, 2010, plaintiffs voluntarily dismissed "any and all claims as alleged against" the two former law partners, "with the

understanding that the case will proceed against Defendant Edward G. Kramer." The court issued a journal entry reflecting this dismissal on February 5, 2010.

{¶ 44} Plaintiffs' complaint expressly alleges a cause of action for unjust enrichment against the defendants other than Edward Kramer. It is undisputed that the other defendants were not parties to the case when the court granted summary judgment; therefore, it did not err in failing to address this cause of action, as it was no longer in front of the court.

{¶ 45} Assuming arguendo that a claim for unjust enrichment against defendant was properly before the court, it was filed outside the one-year statute of limitations for legal malpractice for the reasons delineated above. Assuming further that the unjust-enrichment claim could stand independent of a legal-malpractice claim, it was filed outside of the six-year statute of limitations under R.C. 2305.07.

{¶ 46} Accordingly, plaintiffs' third and final assignment of error is overruled.

Judgment affirmed.

————————

COONEY and ROCCO, JJ., concur.