[Cite as *Pomeroy v. Schwartz*, 2013-Ohio-4920.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 99638

---

# JACQUES C. POMEROY, ET AL.

### PLAINTIFFS-APPELLANTS

vs.

# MARK SCHWARTZ, ET AL.

### DEFENDANTS-APPELLEES

---

### JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-769361

**BEFORE:** McCormack, J., Jones, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 7, 2013

**ATTORNEY FOR APPELLANTS**

Timothy P. Whitford
Waldheger - Coyne
1991 Crocker Road
Suite 550
Westlake, OH 44145


**ATTORNEYS FOR APPELLEES**

Eric Larson Zalud
Matthew D. Gurbach
Benesch, Friedlander, Coplan, & Aronoff L.L.P.
200 Public Square
Suite 2300
Cleveland, OH 44114

TIM McCORMACK, J.:

{¶1} Appellants, Jacques C. Pomeroy ("Pomeroy") and J.P. Agency, Inc. ("JP"), appeal from a judgment of the Cuyahoga County Common Pleas Court that granted summary judgment in favor of appellees, Mark Schwartz ("Schwartz"), G&S Metal Products Co., Inc. ("G&S"), and G&S Metal Products Employee Benefit Plan. The trial court ruled that the statute of limitations barred appellants' claims of breach of contract, unjust enrichment, and conversion. After a careful review of the record and pertinent law, we find no merit to the appeal and affirm the judgment of the trial court.

{¶2} The plaintiffs in this case are Jacques C. Pomeroy and his solely-owned insurance agency, JP. The defendants are Pomeroy's long-term client Schwartz and his company G&S. The subject matter of this litigation is medical insurance claims totaling $362,614.04, which were incurred by G&S employees in 2001-2002 but were not covered under G&S's health insurance policy.

### Substantive Facts and Procedural History

{¶3} The parties had a long and intricate business relationship spanning 40 years. Pomeroy was originally in the business of office equipment sales. He started his insurance business when he sold his first insurance policy in 1963 to Mark Schwartz's father, founder of G&S. A long and extensive business relationship ensued. Over the years, Pomeroy provided many services to G&S, including human resources, 401(K) administration, investment management, employment benefits, group life and disability insurance polices, and health insurance policies, among others.

{¶4}   This case concerns a health insurance policy.   For over 40 years, Pomeroy helped G&S select suitable health insurance plans for its employees.   Pomeroy would obtain quotes from health insurance coverage providers and prepare spreadsheets for comparisons of prices and coverage.   After G&S selected a plan, Pomeroy would prepare the application and collect checks for the insurance premiums.

{¶5}   G&S had always maintained a "self-insured," as opposed to "fully insured," health insurance plan, including the period from November 2001 to November 2002, the pertinent period of time for the instant litigation.   During this time, employees of G&S were covered under a "self-insured" policy issued by Humana, Inc. However, G&S decided to switched to a "fully-insured" plan in November 2002.   From November 2002 to November 2003, G&S's employees were covered under a "fully-insured" policy, also issued by Humana.

{¶6}   Apparently when there is a change of policy from "self-insured" to  "fully insured," the claims that are *incurred* during the prior period but not *made* until the subsequent period — so called "trail claims" — are not covered by either policy.   Separate coverage for the "trail claims" has to be purchased.[1]

---

[1]Pomeroy explained in his deposition that, under a self-insured plan, the claims are paid out of the self-insured plan regardless of when the claims are made or incurred, and therefore, there would be no need for "trail claim" coverage. However, when a self-insured plan is switched to a "fully insured" plan, a separate "trail claim" coverage is required to make it the responsibility of the insurance company to pay the "trail claims."

**{¶7}** G&S did not purchase the additional "trail claims" coverage when it switched its policy from "self-insured" to "fully insured." Beginning in November 2002, after the switch, G&S employees began to find that their claims that were *incurred* during the November 2001 – November 2002 period but were not *made* until after November 2002 were rejected by the insurance company.

**{¶8}** Not wanting to lose his valuable client, Pomeroy tried to resolve the issues. Beginning in February 2003, JP itself started to pay these unpaid claims. As Pomeroy testified later in his deposition, JP made the payments because he felt "a moral obligation to make them." When he told Schwartz about the problem, Schwartz told him to "take care of it," and he did. Also in his own words, he made the payments because he felt "in order for J.P. Agency to retain G&S and the Schwartz business, that this should be paid." He wanted to "silence the complaints until [he] resolved the issue."

**{¶9}** Pomeroy also testified in his deposition that "he was sure" he would get reimbursed later, either by Humana or by G&S, stating "I thought somebody was going to reimburse me" and "[i]t may have been Humana." He emphasized that "I knew that if there was a problem that I would be reimbursed for my expenses." When asked how he knew, he answered "[j]ust because of the relationship."

**{¶10}** Pomeroy testified in his deposition that he did not recall if he had discussed thoroughly with Schwartz the need for a separate "trail claims" when the policy was switched to "fully-insured." According to Schwartz, he did not know G&S did not have

the necessary coverage for the "trail claims" and was never actually offered such a coverage by Pomeroy.

**{¶11}** JP made the last of these "trail claim" payments on September 11, 2003. Nothing was brought up about these payments until three years later, in 2006, around the time when the relationship between Pomeroy and Schwarz went sour.

**{¶12}** The deterioration of their relationship began when Pomeroy tried to sell Schwartz a "loss of income" policy, which turned out to be a fraudulent investment vehicle, peddled by a third individual. Pomeroy's involvement in selling this fraudulent product led to a criminal investigation of him, and Pomeroy was eventually convicted of filing a false tax return over his involvement in the scheme in 2006. This is the same year Pomeroy, for the first time, demanded G&S's reimbursement for the funds G&S had advanced to cover the "trail claims."

**{¶13}** Pomeroy alleges that he demanded the payment at that time because, during an annual audit, the auditor discovered G&S had not paid back the advanced funds for the "trail claims." As a result of the "discovery," Pomeroy's son, who also worked at JP, sent a correspondence to Schwartz on April 20, 2006, demanding payment. The correspondence stated: "During a current outside audit it has been determined that several items paid by the J.P. Agency, Inc. have not been reimbursed by G&S Metal Products Company." The correspondence demanded $362,614.04, referring to the money as "funds advanced."

**{¶14}** In a subsequent correspondence dated May 25, 2006, Pomeroy again demanded payment, stating that JP was never reimbursed by Humana for the payments made by JP regarding the "trail claims." When Pomeroy was asked later in a deposition about this May 25, 2006 correspondence, he testified that "my indication was to go to Humana first and go to G&S second * * *." He stated he was sure he would get paid "by someone."

**{¶15}** According to Schwartz, Pomeroy never raised this issue with him before these correspondences. Schwartz alleged Pomeroy demanded payment at this time because of his diminishing cash flow.

**{¶16}** On November 16, 2011, eight years after JP made the last "trail claims" payment, Pomeroy and JP (collectively "appellants") filed the instant complaint against Schwartz and G&S (collectively "appellees") to recover the funds, asserting breach of oral contract, unjust enrichment, and conversion. Extensive discovery was exchanged, and depositions were taken of Pomeroy and Schwartz.[2]

**{¶17}** Appellees moved for summary judgment, and the trial court granted it, ruling that all three claims were barred by the applicable statute of limitations.

**{¶18}** Appellants now appeal, raising five assignments of error. They state:

1. The trial court erred in finding that the statute of limitations began to accrue as to each claim before all the elements of each claim existed.

---

[2]The instant record is also supplemented with the deposition testimony of Pomeroy and Schwartz from two other related trial court cases.

2. The trial court erred in awarding summary judgment in favor of the defendants by misinterpreting the "discovery rule," which was never relied upon by the plaintiffs.

3. The trial court erred in finding that the claims began to accrue at the time the money was paid rather than at the point in time when repayment was refused and retention of the money became unjust.

4. The trial court erred when it found that there was no evidence for the loan to be repaid when the contract did not set a date for repayment.

5. The trial court erred in awarding summary judgment as genuine issues of material fact remained for resolution by a jury.

{¶19} Because all five assignments of error relate to the timeliness of the claims asserted by appellants, we consider them together.

### Summary Judgment Standard of Review

{¶20} Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co., Inc*., 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); Civ.R. 56(C).

{¶21} "The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment." *Id*. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient. The movant must specifically point to evidence contained within the pleadings, depositions,

answers to interrogatories, written admissions, affidavits, etc., which affirmatively demonstrate that the nonmovant has no evidence to support his claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264. Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant. We review a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241.

### The Timeliness of Appellants' Claims

{¶22} It is undisputed that the "trail claims" from the G&S employees were not covered under either the 2001-2002 ("self-insured") policy or the 2002-2003 ("fully-insured") policy, and that appellants made the payments for these "trail claims." It is also undisputed the last payment was made September 11, 2003, and that Pomeroy made the demand for reimbursement for the first time on April 20, 2006.

{¶23} Appellants asserted breach of oral contract, unjust enrichment, and conversion in their complaint, filed on November 16, 2011. Breach of oral contract and unjust enrichment have a six-year statute of limitations and conversion, four-year. The crux of this appeal is when the causes of action accrued for the statute of limitations purposes.

{¶24} Appellees asserted, and the trial court agreed, that appellants' causes of action accrued, and the statutory period began to run, on September 11, 2003, when

appellants made the last payment for these claims. Appellants assert it was a much later date, April 20, 2006, when appellants demanded reimbursement for the first time.

{¶25} On appeal, appellants no longer contest the untimeliness of their conversion claim, because, even if the cause of action accrued on April 20, 2006 as they claim, the four-year statute of limitation would have expired before the lawsuit was filed. Therefore, we only need to address the timeliness of appellants' breach of oral contract and unjust enrichment claims.

### Breach of Oral Contract

{¶26} A claim based on a contract not in writing must be brought six years after the cause of action accrues. R.C. 2305.07.

{¶27} "Ohio law recognizes that a cause of action accrues 'when the right to prosecute it begins.'" *Kanally v. Ameritech Ohio Co.*, 8th Dist. Cuyahoga No. 8972, 2008-Ohio-4446, ¶ 12, citing *Singh v. ABA Publishing*, 10th Dist. Franklin No. 02AP-1125, 2003-Ohio-2314, ¶ 23, and *Lynch v. Dial Fin. Co. of Ohio, No. 1, Inc.*, 101 Ohio App.3d 742, 747, 656 N.E.2d 714 (8th Dist.1995).

{¶28} The trial court determined the cause of action accrued on September 11, 2003, when the last payment for the "trail claims" was advanced by JP. We agree. If there was an oral agreement made to reimburse JP for the funds advanced, as alleged by appellants, appellants had the right, *beginning from that day*, to seek reimbursement from G&S, first by demanding and then by litigation, if necessary. The last of the "trail claims" payments was paid on September 11, 2003. Therefore, the cause of action

accrued on that day and the statute of limitations for the alleged breach of oral contract ran on September 11, 2009.

**{¶29}** In an effort to extend the time for their breach of oral contract claim, appellants attempt to characterize the "trail claims" payments as a loan and to analogize this case to cases involving loan agreements.

**{¶30}** The case law indicates when an oral contract involves a loan agreement, the courts have been willing to delay the running of the statutory time until when the creditor demands payment or when the borrower refuses to pay. "When the subject of the oral contract is a loan, the accrual date is when the loan is due to be repaid, the lender requests payment, and the borrower fails to pay." *Thomas v. Kramer*, 194 Ohio App.3d 70, 2011-Ohio-1812, 954 N.E.2d 1235, ¶ 34 (8th Dist.), citing *Dandrew v. Silver*, 8th Dist. Cuyahoga No. 86089, 2005-Ohio-6355. When an oral agreement does not specify a time for repayment of a debt, the cause does not accrue until a party demands payment. *Berry v. Lupica*, 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318 (8th Dist.).

**{¶31}** Appellants alleged that there was an oral contract for JP to loan the "trail claims" funds to G&S and, therefore, the statute of limitations did not begin to run until April 20, 2006, when JP demanded, without success, reimbursement of the funds from G&S.

**{¶32}** The problem for appellants' theory is that even if we construe the evidence most strongly in their favor, there was no evidence in the record to support the claim that

the alleged oral contract was for a loan to be repaid upon demand. Pomeroy himself wavered in his depositions when asked why he made the payments for the "trail claims."

{¶33} On one occasion, he testified he made the payments to retain his most valued client; on another occasion he testified he made the payments believing either Humana, G&S, or "someone" would eventually reimburse him. Not once did he testify the payment was a loan to G&S.

{¶34} In the correspondence of April 20, 2006, when JP demanded the reimbursement for the first time, there was no reference to a loan agreement. Furthermore, the fact that no interest on the "loan" was ever mentioned in the parties' communication regarding the "trail claims" payments also belies appellants' characterization of these payments as a loan. Finally, appellants' own statement in their appellate brief is also inconsistent with the allegation of a loan to G&S: "* * * all parties expect a delay in payment for the reimbursement to be sought from the Appellees' insurance company and a demand to be made to the Appellees if no payment was made by the insurer * * *."

{¶35} In its judgment, the trial court rejected the claim of a loan agreement, stating "there is absolutely no evidence to support * * * the allegation that the alleged oral contract was for a loan to be repaid on demand." Our review of the record supports the determination. Because the record lacks any evidence to support a loan agreement, the rule applied in cases such as *Kramer,* 194 Ohio App.3d 70, 2011-Ohio-1812, 954 N.E.2d 1235, and *Lupica*, 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318, is not

applicable in this case to make April 20, 2006, when appellants demanded payment, the accrual date for the breach of oral contract claim.

### Discovery Rule Not Applicable to Breach of Contract Claim

{¶36} In its judgment, the trial court also determined that the discovery rule — which would have extended the statutory time — does not apply in a breach of contract case, stating "[a] cause of action for breach of contract accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."

{¶37} Appellants take issue with this statement by the trial court. They maintain that the discovery rule should have been applicable in this case and tolls the statutory time.

> Generally, a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed. However, the discovery rule is an exception to this general rule and provides that a cause of action does not arise until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, that he or she was injured by the wrongful conduct of the defendant.

(Citations omitted.) *Norgard v. Brush Wellman*, 95 Ohio St.3d 165, 2002-Ohio-2007, 766 N.E.2d 977, ¶ 8.

{¶38} "A court may invoke the discovery rule 'in situations where the injury complained of may not manifest itself immediately and, therefore, fairness necessitates allowing the assertion of a claim when discovery of the injury occurs beyond the statute of limitations.'" *Cristino v. Admr.*, 10 Dist. Franklin No. 12AP-60, 2012-Ohio-4420, 977 N.E.2d 742, ¶ 40, quoting *NCR Corp. v. United States Mineral Prods. Co.*, 72 Ohio St.3d 269, 271, 1995-Ohio-191, 649 N.E.2d 175.

**{¶39}** No Ohio courts have applied the discovery rule to a claim for breach of contract. *Cristino* at ¶ 41, citing *Vitek v. AIG Life Brokerage*, S.D. Ohio No. 06-CV-615, 2008 U.S. Dist. LEXIS 82132 (Sept. 22, 2008), and *Settles v. Overpeck Trucking Co.*, 12th Dist. Butler No. CA93-05-083, 1993 Ohio App. LEXIS 6217 (Dec. 27, 1993).

**{¶40}** Similarly, we decline to apply the discovery rule to this case to extend the time limitation for appellant's breach of oral contract claim. This is not a case "where the injury complained of may not manifest itself immediately." Appellants knew, since 2003, or should have known by the exercise of reasonable diligence, that they were not reimbursed by appellees. They did not make any demand for the reimbursement until three years later, in 2006, and, having been aware that appellees refused the demand for payment in 2006, did not file the lawsuit for another five years. We do not believe that, under these circumstances, "fairness necessitates allowing the assertion of a claim when discovery of the injury occurs beyond the statute of limitations." The application of discovery rule as advocated by appellants would stretch the rule beyond recognition. Appellants' breach of oral contract claim is time barred.

## Unjust Enrichment

**{¶41}** Appellant's unjust enrichment claim is similarly time barred. An unjust enrichment claim is subject to a six-year statute of limitations. *Kramer*, 194 Ohio App.3d 70, 2011-Ohio-1812, 954 N.E.2d 1235, ¶ 45, citing R.C. 2305.07. It arises when the following elements exist: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Miller v. Keybank Natl. Assn.*, 8th Dist. Cuyahoga No. 86327, 2006-Ohio-1725, ¶ 43. "[A] claim for unjust enrichment accrues on the date that money is retained under circumstances that make it unjust to do so." *Palm Beach Co. v. Dun & Bradstreet*, 106 Ohio App.3d 167, 655 N.E.2d 158 (1st Dist.1995).

**{¶42}** Here, the trial court found the unjust enrichment claim accrued on September 11, 2003, when the last payment of the "trail claims" was made. We agree. This is the date the last of the benefit that was allegedly (1) conferred to appellees, (2) with appellees' knowledge, and (3) was retained, under circumstances where it would be unjust without payment.

**{¶43}** On appeal, appellants advance a rather convoluted argument for their claim that the April 20, 2006 date was the date of accrual for the unjust enrichment cause of action. They argue that an unjust enrichment action accrues on the date when the benefit/money is *wrongfully* retained. They claim that, because the "trail claim" funds

was not *wrongfully* retained until April 20, 2006, that is the date the statute of limitations began to run. They cite the *Palm Beach* case for this argument.

{¶44} Our reading of *Palm Beach,* 106 Ohio App.3d 167, 655 N.E.2d 158, does not support appellants' claim. There, the defendant, a credit information company, allegedly deceived plaintiff company into buying more of its services than plaintiff needed. The First District, after stating that Ohio does not recognize the discovery rule for unjust enrichment claims, explained that the traditional rule in Ohio for a cause of action for unjust enrichment is that it accrues from the date "that money is retained under circumstances where it would be unjust to do so." *Id*. at 175. In response to the plaintiff's claim that the cause of action accrued only when defendant refused to return the overcharged payment, the court reasoned as follows:

> * * * Although in certain cases the unlawfulness of the retention may not arise until there is a request for a return of the money, in the instant case, if Palm Beach's allegations are true, it was the receipt of the money that was unlawful, and therefore the cause of action accrued at the latest, as the trial court determined, in 1982 when the last of the alleged overcharges, or false billings or accountings, occurred.

*Id.*

{¶45} The trial court's determination in the instant case, that the last payment of the "trail claims" triggered the statute of limitations, comports with *Palm Beach*. Although the First District appeared to suggest, without explanation, that there might be cases where "the unlawfulness of the retention may not arise until there is a request for a return of the money," the court held the last overcharge or false billing was the date the cause of action of unjust enrichment began to accrue.

**{¶46}** Appellants' attempt to circumvent the statute of limitations, by arguing appellees' retention of the benefit only became "wrongful" in April 2006, is equally unavailing. Appellees' failure to reimburse appellants, if unjust under the circumstances as appellants allege, was unjust from the beginning; *when* appellants decided to demand the return of the allegedly wrongfully retained benefit is not a significant event for purposes of the statute of limitations. To conclude otherwise would allow a plaintiff to unilaterally control the statutory time.

**{¶47}** Appellants have failed to create a genuine issue of material fact for trial. The trial court properly concluded the appellants' claims are barred by the applicable statute of limitations, entitling them to summary judgment. Appellants' assignments of error are overruled.

**{¶48}** Judgment affirmed.

It is ordered that appellees recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

LARRY A. JONES, SR., P.J., and
EILEEN T. GALLAGHER, J., CONCUR