[Cite as *Dottore v. Vorys, Sater, Seymour & Pease, L.L.P.*, 2014-Ohio-25.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 98861

---

# MARK DOTTORE, ET AL.

### PLAINTIFFS-APPELLANTS

vs.

# VORYS, SATER, SEYMOUR
# & PEASE, L.L.P., ET AL.

### DEFENDANTS-APPELLEES

---

### JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-741375

**BEFORE:** Cunningham, P.J.,* Dinkelacker, J.,* and Fischer, J.*

**RELEASED AND JOURNALIZED:** January 9, 2014

**ATTORNEYS FOR APPELLANTS**

**For Mark Dottore, et al.**

Brian D. Spitz
Fred M. Bean
The Spitz Law Firm, L.L.C.
4568 Mayfield Road, Suite 102
Cleveland, Ohio 44121

**ATTORNEYS FOR APPELLEES**

**For Anthony O. Calabrese III**

Timothy T. Brick
Julie L. Juergens
Matthew T. Norman
Jamie A. Price
Gallagher Sharp
1501 Euclid Avenue
Sixth Floor Bulkley Building
Cleveland, Ohio 44115

**For Vorys, Sater, Seymour and Pease L.L.P.**

Robert J. Fogarty
Steven A. Goldfarb
Derek E. Diaz
Dennis r. Rose
Hahn Loeser & Parks L.L.P.
200 Public Square, Suite 2800
Cleveland, Ohio 44114-2316

Joni Todd
Sikora Law, L.L.C.
8532 Mentor Avenue
Mentor, Ohio   44060

continued...

**For PNC Financial Services Group, Inc.**

Donald S. Scherzer
Richard S. Mitchell
Amanda M. Knapp
Roetzel & Andress, L.P.A.
1375 East Ninth Street, Ninth Floor
One Cleveland Center
Cleveland, Ohio 44114

PENELOPE CUNNINGHAM, P.J.*:

{¶1} Plaintiffs-appellants Mark Dottore, Dottore Companies, L.L.C., and Dottore Brothers, L.L.C., brought this action, arising out of a failed attorney-client relationship with a law firm, against various defendants for legal malpractice, breach of contract, breach of fiduciary duty, promissory estoppel, breach of confidentiality, fraud, civil conspiracy, spoliation of evidence, and Racketeering Influenced and Corrupt Origination Act ("RICO") violations. The trial court dismissed some of the claims and granted summary judgment against the plaintiffs on the remaining claims. For the reasons that follow, we affirm.

## I. Factual Background and Procedural History

### A. General Background

{¶2} The plaintiffs-appellants are Mark Dottore and two limited liability companies with which Dottore has an agency relationship, Dottore Companies, L.L.C., and Dottore Brothers, L.L.C. These plaintiffs-appellants presented their allegations as a group. Therefore, we collectively refer to them as the "Dottore Plaintiffs," unless otherwise indicated.

{¶3} The defendants-appellees include the law firm Vorys, Sater, Seymour and Pease, L.L.P., ("Vorys"); several attorneys who were either employed by or otherwise alleged to be agents of Vorys, including Anthony J. O'Malley, Drew T. Parobek, Joseph D. Lonardo, David W. Hardymon, and Anthony O. Calabrese, III;[1] PNC Financial

---

[1] The Dottore Plaintiffs also named John Winship Read and Bryan J. Farkas as defendants

Services Group, Inc. ("PNC"), formerly known as National City Bank; and PNC's former employee, Kevin T. Duffy.

{¶4} In presenting the allegations, the Dottore Plaintiffs repeatedly referred to Vorys and its attorneys collectively as the "Vorys Defendants," with a few exceptions. We, too, will refer to these defendants as the "Vorys Defendants," unless otherwise noted.

{¶5} According to the amended complaint, the Dottore Plaintiffs were clients of the Vorys Defendants, but the Dottore Plaintiffs did not specify when the attorney-client relationship began, only that it continued through November 5, 2012.

{¶6} The Dottore Plaintiffs also did not specify on what legal matters the Vorys Defendants had represented them, with one exception. They mentioned that the Vorys Defendants had provided representation to the Dottore Plaintiffs in a dispute with PNC over fees for receivership services provided by the Dottore Plaintiffs to PNC.

**B. General Allegations Against the Vorys Defendants**

{¶7} In the amended complaint, the Dottore Plaintiffs described several instances of alleged wrongful conduct by Vorys and its lawyers toward the Dottore Plaintiffs. This included an allegation that the Vorys Defendants had "engaged in a pattern of corrupt activities with various 'Cuyahoga County officials' to the [detriment] of their clients, including [the Dottore Plaintiffs]." As an example of these "corrupt activities," the Dottore Plaintiffs alleged that Vorys, through O'Malley, had hired the son of Jimmy

---

based on their alleged association with Vorys, but the trial court dismissed Read and Farkas from the lawsuit due to lack of service.

Dimora — Anthony Dimora — and the son of Peter Lawson Jones — Ryan Lawson Jones — and that these sons "did little or no work" for Vorys but were generously paid, with their wages then turned over to their fathers as "bribes" as part of an express agreement.

{¶8} According to the allegations, the Vorys Defendants funded these bribes by overbilling and adding unauthorized and improper expenses in the bills to several clients, including the Dottore Plaintiffs. Because the Vorys Defendants sent these allegedly fraudulent bills for services by United States mail and electronically, the Vorys Defendants committed the federal crime of mail fraud and the state-law offense of telecommunication fraud.

{¶9} The Dottore Plaintiffs further alleged that this conduct made Vorys and its lawyers the targets of a "federal corruption probe" in Cuyahoga County. Because they were targets, the Vorys lawyers met among themselves and with others, including the elder Dimora, and then destroyed or attempted to destroy "all documents confirming these meetings."

{¶10} And, as a result of the federal corruption probe into these activities, in February 2009, the office of the United States Attorney for the Northern District of Ohio subpoenaed the client files retained by Vorys, including the Dottore Plaintiffs' "legal files." The Vorys Defendants did not immediately notify the Dottore Plaintiffs of the document request. Further, according to the allegations, the Vorys Defendants retained attorney Ralph E. Cascarilla and his law firm, Walter & Haverfield, L.L.P., to aid in

complying with the subpoena, and they delivered the Dottore Plaintiffs' attorney-client and work-product materials to Cascarilla and Walter & Haverfield without obtaining the Dottore Plaintiffs' permission and without immediately informing them that they had done so.

{¶11} Additionally, the Dottore Plaintiffs claimed that the Vorys Defendants knew that the corruption probe "involved issues relating to the conduct" of its lawyers and that those accusations created a conflict of interest between the Vorys Defendants and their clients. According to the allegations, the Vorys Defendants should have immediately told the Dottore Plaintiffs about the conflict of interest, the government's request for the Dottore Plaintiffs' files, and the involvement of Cascarilla and his law firm. And, it is alleged that the Vorys Defendants' failures amounted to a breach of the Vorys Defendants' "ethical and fiduciary obligation."

{¶12} The Dottore Plaintiffs alleged that those failures also breached oral and written contracts previously entered into between the Dottore Plaintiffs and the Vorys Defendants to settle claims against Vorys. According to the Dottore Plaintiffs, these contracts, later identified herein as the "Parobek Settlement," required the Vorys Defendants to notify the Dottore Plaintiffs "immediately upon receiving a request for their confidential and/or privileged documents."

{¶13} Because of the Dottore Plaintiffs' involuntary involvement in the probe, they allegedly lost business and sustained reputation damages. Further, they alleged that they had incurred "extensive legal fees."

### C. Vorys' Conspiracy with PNC and Duffy
### and the Spoliation of Evidence

{¶14} PNC and Duffy allegedly conspired with the Vorys Defendants "to illegally steal information from [the Dottore Plaintiffs] to use for their mutual benefit." This conspiracy claim had its roots in a 2004 dispute between the Dottore Plaintiffs and PNC (then known as National City Bank). At that time, the Vorys law firm also represented PNC in some unidentified matter.

{¶15} According to the allegations, the Dottore Plaintiffs, at the urging of Vorys, had provided receivership services to PNC with respect to a transaction involving a company called Central Cadillac. After the Dottore Plaintiffs provided the services, PNC failed to pay the Dottore Plaintiffs for those services. When the Dottore Plaintiffs wanted to sue PNC, the Vorys Defendants offered and "broker[ed]" a resolution, but the Vorys Defendants allegedly failed to provide an engagement letter or to obtain a conflict waiver. Further, according to the allegations, Vorys fraudulently induced the Dottore Plaintiffs to quickly resolve the dispute and to accept a "substantially reduced fee" by representing that the settlement could lead to future engagements, but PNC never engaged their services again.

{¶16} The conspiracy allegedly continued into 2005. At that time, PNC, in an action unrelated to the Central Cadillac dispute, had obtained judgments against the Dottore Plaintiffs on two cognovit notes in an amount close to $1,000,000. According to the allegations, PNC was able to attach the Dottore Plaintiffs' bank accounts to satisfy that judgment after Vorys's associate Parobek had supplied Duffy, then PNC's in-house

counsel, with the relevant bank account information obtained from the Dottore Plaintiffs' client files located at the firm.

{¶17} None of the attorneys at Vorys, including Parobek, obtained permission for the disclosure or warned the Dottore Plaintiffs of the "impending sweeping of accounts." The Dottore Plaintiffs asserted that they had "an unforeseeable shortage of liquid assets" when their accounts were swept to satisfy the judgment, and that their relationship with several banks was "permanently damaged." The Vorys Defendants and PNC allegedly had maintained files containing documents confirming this conduct, but they later destroyed them "after [they] knew litigation was probable." This later conduct served as the basis of the spoliation-of-evidence claim.

## D. Breach of the Parobek Settlement

**{¶18}** Finally, the Dottore Plaintiffs alleged in the amended complaint that the Vorys Defendants had failed to honor written and oral agreements, which we refer to as the "Parobek Settlement." This settlement occurred after the Dottore Plaintiffs had learned of Parobek's conduct with respect to the "swept" bank accounts and had threatened to sue Vorys as a result. According to the allegations, after the Dottore Plaintiffs had threatened to sue, Calabrese and O'Malley met with Mark Dottore to discuss the "Parobek situation." At that time, O'Malley, in his capacity as the managing partner of Vorys's Cleveland office, admitted that the Dottore Plaintiffs had a claim for damages against the law firm and represented to Dottore that the Dottore Plaintiffs would have one year after the termination of the attorney-client relationship to pursue that claim. As part of the Parobek Settlement, the Dottore Plaintiffs agreed not to pursue a claim at that time in exchange for several oral promises from O'Malley and written promises from Calabrese.

**{¶19}** Calabrese wrote to Dottore as follows:

Dear Mark,

I truly appreciate your understanding regarding the whole "Drew" situation. I do not know if I would have been as understanding as you have been if someone took my private information. As a client, but more importantly, as a friend, you deserve better treatment.

Lastly, as I promised last week, because you have graciously kept your business with us and agreed to keep these matters confidential, this will never happen again.

**{¶20}** The Dottore Plaintiffs alleged that the Parobek Settlement included promises that the Dottore Plaintiffs' confidential information would be "completely protected" and would not be released absent consent, that the Dottore Plaintiffs would be immediately notified of any attempt to gain their confidential and/or privileged information, and that the firm would "address" the Parobek situation "harshly."

**{¶21}** Despite these promises, Vorys allegedly did not punish Parobek, and, when Vorys was issued the federal subpoena, Vorys allegedly broke the other two promises when it provided the Dottore Plaintiffs' files to Cascarilla without obtaining their permission and without immediately notifying the Dottore Plaintiffs about the document request.

### E. Procedural Background

**{¶22}** The Dottore Plaintiffs filed this lawsuit in November 2010. The original complaint contained claims for "legal malpractice," "breach of contract," "breach of fiduciary duty," "promissory estoppel," "breach of confidentiality," "fraud," and "civil conspiracy." They amended the complaint in March 2011 to add allegations in support of the original claims and to add claims for the "spoliation of evidence" and for a "violation of the Racketeering Influenced and Corrupt Organizations Act."

**{¶23}** The amendment occurred after several defendants had moved to dismiss for failure to state a claim. The Dottore Plaintiffs responded by asking for leave to amend the complaint to fill in "potentially embarrassing" allegations purposely omitted. The trial court granted the Dottore Plaintiffs leave to amend the complaint, but ordered that

the amended complaint be filed under seal.[2] The trial court also limited discovery at that time to the "colorable affirmative defense of statute of limitations" that the Vorys Defendants had raised in their answer.

{¶24} When the Vorys Defendants, without Calabrese, answered the original complaint and raised the statute of limitations as a defense, they also asserted two counterclaims against the Dottore Plaintiffs. The first sought a judgment declaring that the Dottore Plaintiffs' claims all sounded in malpractice and were barred under the one-year statute of limitations for legal-malpractice claims. The second sought damages against Dottore for legal fees owed to Vorys by the receivership estate in the case *Variable Annuity Life Ins. Co. v. 113 St. Clair Properties, Ltd.* ("*Variable Annuity*"). The trial court in the *Variable Annuity* case had appointed Dottore as a receiver of the property foreclosed upon and Dottore had hired Vorys to represent the receivership. The Vorys Defendants, without Calabrese, ultimately dismissed the second counterclaim.

{¶25} After answering the amended complaint, the Vorys Defendants, without Calabrese, moved for summary judgment on their statute-of-limitations defense with respect to the malpractice, breach-of-contract, breach-of-fiduciary-duty, promissory-estoppel, breach-of-confidentiality, fraud, and civil-conspiracy claims, and for judgment on the pleadings with respect to the newly added spoliation and RICO claims. To support their statute-of-limitations defense, they submitted the affidavits of O'Malley and Hardymon.

---

[2] The trial court later unsealed the record by a stipulated order.

**{¶26}** Calabrese answered the amended complaint and later moved for summary judgment on all claims against him. He incorporated the other Vorys Defendants' statute-of-limitations argument and presented his own argument for summary judgment based on his "leave of absence" from the Vorys law firm beginning in February 2009 and the permanent termination of his relationship with the Vorys law firm in September 2009.

**{¶27}** PNC and Duffy moved to dismiss the conspiracy and spoliation claims asserted against them in the amended complaint. Those parties argued that the cause of action for civil conspiracy failed to state a claim because the Dottore Plaintiffs had not alleged any damages caused by their conduct and that the spoliation claim failed because there was no legal claim for PNC and Duffy to disrupt by destroying evidence.

**{¶28}** The Dottore Plaintiffs opposed the summary judgment motions of the Vorys Defendants, including Calabrese's, but moved in the alterative for a continuance to conduct additional discovery, as provided by Civ.R. 56(F). They also opposed the Vorys Defendants' (without Calabrese) motion for judgment on the pleadings with respect to the spoliation and RICO claims, and PNC's and Duffy's motion to dismiss. The trial court disposed of all of these motions in a decision dated August 3, 2012, in which it granted all of the defendants' motions and denied the Dottore Plaintiffs' motion for a continuance to conduct additional discovery. From this judgment, the Dottore Plaintiffs now appeal, raising 11 assignments of error.

## II. Analysis

### A. Summary Judgment to the Vorys Defendants

{¶29} For ease of discussion, we begin with the trial court's grant of summary judgment to the Vorys Defendants, including Calabrese, on many of the claims based on a statute-of-limitations defense. The trial court found that the first seven counts of the amended complaint in essence were all claims for legal malpractice, and that, based on the evidence presented, the legal-malpractice causes of action had accrued at the latest in the summer of 2009. Because a claim for malpractice is governed by a one-year statute of limitations, and the Dottore Plaintiffs did not file the lawsuit until November 15, 2010, more than one year after that accrual date, the court concluded that these claims against all of the Vorys Defendants were barred by the statute of limitations.

{¶30} The Dottore Plaintiffs challenge this part of the trial court's decision in assignments of error Nos. 3 through 10. The overarching issue presented is whether, considering the Dottore Plaintiffs' amended complaint and the documentation submitted under Civ.R. 56(C), the trial court properly determined that the Dottore Plaintiffs' legal-malpractice, breach-of-contract, promissory-estoppel, fraud, and civil-conspiracy claims against Vorys, O'Malley, Parobek, Lonardo, Hardymon, and Calabrese were barred by R.C. 2305.11, the statute of limitations requiring claims for malpractice to be filed "within one year after the cause thereof accrued." We hold that the trial court did not err because (1) the gist of the causes of action was malpractice, (2) they filed their claims well beyond one year from the latest date upon which the causes of action could have accrued, (3) the record does not contain any evidence of an agreement to extend the

statute of limitations, and (4) the court's denial of the Dottore Plaintiffs' Civ.R. 56(F) motion for additional time to respond was not an abuse of discretion.

{¶31} We review the grant of summary judgment de novo, applying the standards set forth in Civ.R. 56. *Doe v. Schaffer*, 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000). To that end, summary judgment is proper when there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C).

### 1. Malpractice Claims — Professional Misconduct

{¶32} The Dottore Plaintiffs argue that the trial court applied an incorrect standard for determining whether claims are subsumed into a legal-malpractice claim and that, as a result, the trial court erred in determining that four of their claims — the breach-of-contract, promissory-estoppel, fraud, and conspiracy claims — were untimely filed. We agree with the Dottore Plaintiffs that the trial court misstated the standard when discussing this issue. However, after applying the correct standard, we ultimately concur with the trial court's conclusion that the gist of those claims sounded in legal malpractice, despite the labels that the Dottore Plaintiffs affixed to them.

{¶33} It has long been established that "an action against one's attorney for damages resulting from the manner in which the attorney represented the client constitutes an action for malpractice within the meaning of R.C. 2305.11, regardless of whether predicated upon contract or tort." *Muir v. Hadler Real Estate Mgmt. Co.*, 4

Ohio App.3d 89, 90, 446 N.E.2d 820 (10th Dist.1982). "The term 'malpractice' refers to professional misconduct, i.e. the failure of one rendering services in the practice of a profession to exercise that degree of skill and learning normally applied by members of that profession in similar circumstances." *Strock v. Pressnell*, 38 Ohio St.3d 207, 211, 527 N.E.2d 1235 (1988), citing 2 Restatement of the Law 2d, Torts, Section 299(A) (1965), quoted in *Natl. Union Fire Ins. Co. of Pittsburgh, P.A. v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, ¶ 15.

{¶34} The elements of a claim for malpractice under Ohio law are: (1) an attorney-client relationship giving rise to a duty, (2) a breach of that duty and a failure to conform to the standard required by law, and (3) a causal connection between the conduct complained of and the resulting damages or loss. *Vahila v. Hall*, 77 Ohio St.3d 421, 427, 674 N.E.2d 1164 (1997). An attorney owes to a client the duty to exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated, and to discharge that duty in a reasonably diligent, careful, and prudent manner. *Simmons v. Rauser & Assocs. L.P.A.,* 8th Dist. Cuyahoga No. 96386, 2011-Ohio-4510, ¶ 7, citing *Palmer v. Westmeyer*, 48 Ohio App.3d 296, 298, 549 N.E.2d 1202 (6th Dist.1988).

{¶35} We determine the applicable statute of limitations for a claim from the "gist of the complaint," and not from the label that a party may assign to a set of facts. *Hibbitts v. Cincinnati*, 4 Ohio App.3d 128, 131, 446 N.E.2d 832 (1st Dist.1982). When the gist of a complaint sounds in malpractice, the other duplicative claims, even those

labeled as fraud and breach of contract, are subsumed within the legal-malpractice claim. *Id*.

### 2. "Manner of Representation" is the Test

{¶36} With respect to the breach-of-contract, promissory-estoppel, and conspiracy claims, the trial court found that "Vorys was only in a position to commit any of these wrongs by serving as legal counsel for the plaintiffs." The court reasoned that, absent the attorney-client relationship, "then Vorys never would have possessed the plaintiffs' confidential information to give to PNC, Walter & Haversfield and the federal grand jury, and never would have been in a potential position of conflict between the plaintiffs and PNC." The court then concluded that these allegations did not set forth a cause of action apart from legal malpractice.

{¶37} The trial court's decision can be read to hold that all claims against an attorney that would not have arisen but for any attorney-client relationship must be subsumed within a claim for legal malpractice. We believe that holding misstates the law, which provides, generally, that a cause of action will be subsumed into a malpractice claim if it arises out of "the manner in which the attorney represented the client." *Muir*, 4 Ohio App.3d at 90, 446 N.E.2d 820. This standard focuses on whether the claim involves professional misconduct, which is a narrower focal point than merely determining whether there was an attorney-client relationship.

{¶38} Applying the manner of representation standard, however, it is clear that the Dottore Plaintiff's breach-of-contract, promissory-estoppel, fraud, and conspiracy claims

involved the professional misconduct of the Vorys Defendants and, therefore, these claims were properly subsumed in the malpractice claim.

### a. Breach of Contract and Promissory Estoppel

{¶39} With respect to the breach-of-contract and promissory-estoppel claims, the Dottore Plaintiffs contended that after Parobek and Vorys had provided their confidential information to PNC, the Dottore Plaintiffs and Vorys entered into the Parobek Settlement — a settlement contract that called for the Dottore Plaintiffs to leave their business at the law firm. In exchange, Vorys's lawyers purportedly agreed to "specific confidentiality protocols" that required them to (1) "completely protect" the Dottore Plaintiffs' confidential information, (2) "immediately notify" the Dottore Plaintiffs of any attempt to gain that information, and (3) "not release" that information without their "express consent." These "protocols" were breached, the Dottore Plaintiffs argued, when the Vorys Defendants failed to immediately notify them of the grand jury subpoenas and when Vorys allowed the attorney representing the law firm in the investigation, Ralph Cascarilla at Walter & Haverfield, to review the Dottore Plaintiffs' documents and advise the law firm before producing those documents to the federal investigators.

{¶40} Despite the Dottore Plaintiffs' labeling, these claims all involved professional misconduct because the "settlement contract" and the "specific confidentiality protocols" at issue merely encompassed already existing legal duties. *See Bohan v. Dennis C. Jackson Co.*, 188 Ohio App.3d 446, 2010-Ohio-3422, 935 N.E.2d 900, ¶ 19 (8th Dist.). Vorys did not, as the Dottore Plaintiffs now argue, agree to serve

as escrow agent separate from the provision of legal services. An escrow agent is a third-party whose function is to hold a legal document, such as a deed or title, or the property of a promissor for a certain amount of time or until the occurrence of a condition, at which time the escrow agent is to deliver the document or property to the promisee. *See Black's Law Dictionary* 584 (8th Ed.2004); *Calhoun v. McCullough*, 8th Dist. Cuyahoga No. 60271, 1991 Ohio App. LEXIS 1844 (Apr. 25, 1991). Here, the Vorys Defendants did not agree to serve as an escrow agent.

{¶41} We are also not persuaded by the Dottore Plaintiffs' argument that O'Malley's representation concerning the tolling of the statute of limitations was a contract to extend the statute of limitations for malpractice claims. The Dottore Plaintiffs had alleged and had argued that O'Malley made the representation as legal advice and not as an express agreement or even a promise that could be the subject of an estoppel claim.

{¶42} Under these circumstances, the breach-of-contract and promissory-estoppel allegations fall within the class of conduct that "arises out of the manner in which the client was represented within the attorney-client relationship" and were properly subsumed within the malpractice claim.

## b. Fraud

**{¶43}** Likewise, the fraud claim sounds in malpractice. The Dottore Plaintiffs alleged that the Vorys Defendants had defrauded them by not informing them of the transmittal of confidential and privileged information to PNC, the impeding sweeping of their bank accounts by PNC, and the arrival of a federal subpoena seeking the Dottore Plaintiffs' documents, all for the benefit of "[the Vorys Defendants'] own personal gain."

**{¶44}** But as the trial court noted, the Dottore Plaintiffs claimed as fraud the Vorys Defendants' failure to advise them of the same conduct that they also charged as legal malpractice, and the failure to inform a client that malpractice has occurred is not a tort separate from the malpractice itself. Further, the Dottore Plaintiffs did not allege that the "personal gain" that the Vorys Defendants sought by the concealment was anything more than keeping the Dottore Plaintiffs' business and avoiding a malpractice claim. This is not the type of personal gain that elevates a concealment during the course of legal representation from an act of malpractice to an act of fraud. *See Gullatte v. Rion*, 145 Ohio App.3d 620, 627, 763 N.E.2d 1215 (2d Dist.2000).

**{¶45}** The Dottore Plaintiffs also alleged in the complaint that they had been fraudulently billed, and they now argue that those allegations should not have been subsumed into the malpractice claim. But courts have held that a complaint concerning the billing of fees "arises out of the manner in which the client was represented within the attorney-client relationship." *Rosenberg v. Atkins*, 1st Dist. Hamilton No. C-930259, 1994 Ohio App. LEXIS 4552 (Oct. 5, 1994.); *Chambers v. Cottrell*, 6th Dist. Lucas No.

L-10-1178, 2011-Ohio-144, ¶ 13; *Wilkerson v. O'Shea*, 12th Dist. Butler No. CA2009-03-68, 2009-Ohio-6550, ¶ 13. We conclude that the Dottore Plaintiffs' vague allegations of fraudulent billing fall within this rule.

**{¶46}** Finally, the Dottore Plaintiffs argue that the trial court erred by subsuming into the malpractice claim the fraud allegations based on O'Malley's misrepresentation to Dottore after the Parobek situation concerning the statute of limitations for malpractice actions. O'Malley allegedly told Dottore that it was in the best interest of the Dottore Plaintiffs to leave business with Vorys because if Vorys "did not live up to its end of the bargain" with respect to the Parobek Settlement, the Dottore Plaintiffs would have one year after the attorney-client relationship ended to pursue a malpractice claim. The statement allegedly made by O'Malley only partially states the law because the statute of limitations may begin to run when the attorney-client relationship for a particular matter ends, notwithstanding an ongoing attorney-client relationship with respect to other matters. *See Omni-Food & Fashion, Inc. v. Smith*, 38 Ohio St.3d 385, 387, 528 N.E.2d 941 (1988).

**{¶47}** But the Dottore Plaintiffs' allegations and their arguments below characterized O'Malley's representation as erroneous legal advice and no more. Under these circumstances, this allegation falls within the class of conduct that "arises out of the manner in which the client was represented within the attorney-client relationship" and was properly subsumed within the malpractice claim.

### c. Civil Conspiracy

**{¶48}** The cause of action based on a civil conspiracy involves "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (1998).

**{¶49}** The gist of the Dottore Plaintiffs' conspiracy allegation is that the Vorys Defendants breached the duty of confidence arising from the attorney-client relationship when they provided the Dottore Plaintiffs' banking information to PNC without the Dottore Plaintiffs' consent and knowledge and then destroyed documents establishing this breach. The Dottore Plaintiffs based the conspiracy claim on professional misconduct — alleged deficiencies and omissions in the manner of representation. Because these allegations involved the manner of the legal representation, we conclude that the trial court properly determined that with respect to Vorys and its attorneys, the allegations sounded only in malpractice.

### d. Attorney-Client Relationship with Parobek and Vorys

**{¶50}** The Dottore Plaintiffs assert now that Parobek never specifically represented them, and therefore the breach of confidentiality arising from Parobek's actions while he was employed at Vorys fell outside of the scope of an attorney-client relationship.

**{¶51}** But, as noted by the Vorys Defendants, the Dottore Plaintiffs had alleged in the amended complaint that "[d]uring all relevant times, [they] were clients of Vorys * * * and *Parobek*." (Emphasis added.) And Dottore's statement in his affidavit groups Parobek in with other Vorys lawyers who allegedly "never prepared or offered Plaintiffs a

contract that limited the scope of *their* representation." (Emphasis added.)  Under these circumstances, the Dottore Plaintiffs are estopped from making this argument, which is undermined in any event by Dottore's uncontroverted statement that Parobek did "represent" them.

{¶52} Finally, the Dottore Plaintiffs argue that the claims against the Vorys law firm were erroneously subsumed into the malpractice claim because the law firm never represented them.

{¶53} In arguing that their claims against the Vorys firm cannot be subsumed into the malpractice claim, the Dottore Plaintiffs rely on *Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939.  In that case, the United States Court of Appeals for the Sixth Circuit certified a question to the Ohio Supreme Court regarding whether a "legal malpractice claim [could] be maintained directly against a law firm [under Ohio law] when all the relevant principals and employees [had] either been dismissed from the lawsuit or were never sued in the first instance." *Id*. at ¶ 1.  The court answered the certified question in the negative, explaining that because a law firm does not engage in the practice of law, it can only be vicariously liable for malpractice. *Id.* at paragraphs one and two of the syllabus.

{¶54} While the *Wuerth* court undisputedly recognized that only individuals can practice law, it did not hold, as the Dottore Plaintiffs appear to argue, that a client's derivative claim against a law firm for the malpractice of the law firm's attorney is not a

claim sounding in malpractice. Rather, the derivative claim against the law firm under the doctrine of respondeat superior is necessarily one for malpractice. *See id.* at ¶ 26.

**{¶55}** Because the fraud, breach-of-contract, promissory-estoppel, and civil-conspiracy claims are based on the Vorys Defendants' alleged acts or omissions committed in their representation of the Dottore Plaintiffs, either by negligence or by a breach of the contract of employment governing the relationship, the trial court did not err in determining that these claims sound in legal malpractice.

### 3. Malpractice Claims against Vorys and its Attorneys Were Untimely

**{¶56}** Under Ohio law, a malpractice lawsuit must be filed within one year after the date that the cause of action accrued. R.C. 2305.11(A). Accrual occurs at the later of either (1) the occurrence of "a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's acts or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney" or (2) "when the attorney-client relationship for that particular transaction or undertaking terminates." *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989), syllabus, cited in *Smith v. Conley*, 109 Ohio St.3d 141, 2006-Ohio-2035, 846 N.E.2d 509, ¶ 4.

**{¶57}** Under *Zimmie*, a court must compare the accrual dates based on a "cognizable event" and the termination of the attorney-client relationship; whichever date is later will be the accrual date for the filing of the legal-malpractice action. *Zimmie* at syllabus.

**{¶58}** A "cognizable event" is an event that is "sufficient to alert a reasonable person that his or her attorney may have committed an improper act and that further investigation is needed." *Trustees of Ohio Carpenters' Pension Fund v. U.S. Bank Natl. Assn.*, 189 Ohio App.3d 260, 2010-Ohio-911, 938 N.E.2d 61, ¶ 10 (8th Dist.). As explained in *Zimmie*, the client does not need to know "the full extent of the injury before there is a cognizable event." *Zimmie* at 58.

**{¶59}** The "termination" rule depends upon the termination of legal services in a "particular transaction or undertaking," and "avoids a standard based on continuous representation." *Thomas v. Kramer*, 194 Ohio App.3d 70, 2011-Ohio-1812, 954 N.E.2d 1235, ¶ 18 (8th Dist.), citing *Omni-Food*, 38 Ohio St.3d at 387, 528 N.E.2d 941.

**{¶60}** When an attorney-client relationship for a particular undertaking or transaction has terminated "is a question of fact and is to be determined by considering the actions of the parties." *Conley*, 109 Ohio St.3d 141, 2006-Ohio-2035, 846 N.E.2d 509, at ¶ 9, citing *Omni-Food* at 388. But when reasonable minds can come to but one conclusion concerning the date of termination, the issue may be determined as a question of law in a summary judgment proceeding. *See, e.g., Accelerated Sys. Integration, Inc. v. Ritzler, Coughlin & Swansinger, Ltd.*, 8th Dist. Cuyahoga No. 97481, 2012-Ohio-3803, ¶ 43.

**{¶61}** In this case, the Dottore Plaintiffs filed the original complaint on November 15, 2010. The trial court determined under both prongs of the *Zimmie* test that the cause

of action for malpractice had accrued over a year before that date, and therefore the complaint was not timely. We agree.

### a. Accrual Based on the Cognizable-Event Prong

{¶62} In the complaint, the Dottore Plaintiffs alleged that the Vorys Defendants committed malpractice when they mediated a dispute with PNC for receivership fees and when Parobek gave PNC the Dottore Plaintiffs' banking information to collect on a judgment. The Dottore Plaintiffs did not set forth dates for either of those events in the complaint.

{¶63} Although the dates were not set forth in the complaint, O'Malley averred that the Dottore Plaintiffs had signed a conflict waiver related to Vorys's mediation of the fee dispute in June 2005, and that Dottore had signed a settlement agreement releasing the Dottore Plaintiffs' claim against PNC for further fees in December 2005. The relevant documents were attached to O'Malley's affidavit and this evidence was undisputed. From this evidence, we can only conclude that the Dottore Plaintiffs were aware of the conflict of interest in 2005.

{¶64} Further, the Dottore Plaintiffs necessarily became aware that PNC was not going to hire them to provide future services as a result of the settlement when PNC had not retained their services for two years after the settlement of the claim, which occurred in December 2005. As a result, we conclude that the Dottore Plaintiffs were on notice of any malpractice claim related to the PNC fee matter no later than December 2007.

**{¶65}** Despite the absence of dates alleged in the complaint, the record demonstrates that the Dottore Plaintiffs were on notice of their malpractice claim related to the "Parobek situation" before August 26, 2009. Calabrese undisputedly left the Vorys law firm on that date, and he had given Dottore the note of apology for Parobek's conduct while he was still a member of the firm. Further, the Dottore Plaintiffs alleged that the injury caused by the alleged provision of its banking information was immediate. Therefore, we can only conclude that the Dottore Plaintiffs had discovered this injury no later than the end of August 2009.

**{¶66}** The remaining malpractice allegations are related to the disclosure of documents to Cascarilla and his law firm, Walter & Haverfield, in the preparation of a privilege log in connection with the grand jury subpoenas. The Vorys Defendants presented undisputed evidence involving the June-through-November-2009 communications between Vorys, Cascarilla, the Dottore Plaintiffs, and Robert T. Glickman, the attorney the Dottore Plaintiffs had retained in June 2009 to represent their interests. These communications were attached to the affidavit of Vorys's attorney Hardymon.

**{¶67}** Hardymon averred that he had advised the Dottore Plaintiffs in writing on June 12, 2009, that Vorys had been served with a subpoena in connection with "an alleged corruption" probe that required the production of certain documents relating to professional services that the Vorys firm had rendered to the Dottore Plaintiffs. This

letter included a CD containing copies of documents that Vorys proposed to produce to the Federal Bureau of Investigation.

{¶68} In the June 12, 2009 letter, Hardymon suggested that the Dottore Plaintiffs retain separate counsel to review the material. The Dottore Plaintiffs retained attorney Glickman to represent them. On June 25, 2009, Glickman provided Vorys with written approval to produce certain documents and to assert the attorney-client privilege or work-product protection for certain documents. Glickman sent a letter clarifying the Dottore Plaintiffs' position the following day. Glickman and Hardymon engaged in similar communication during July, October, and early November 2009, as more documents were prepared for production. Hardymon forwarded Glickman a copy of the final privilege log on November 5, 2009.

{¶69} Additionally, on July 24, 2009, Cascarilla, as counsel for Vorys, wrote to advise Glickman that a privilege log had been prepared that identified documents that were being withheld from Vorys's response to the subpoena on the grounds of attorney-client privilege. On July 28, 2009, Glickman informed Cascarilla by email that the privilege log was "not acceptable" because it "disclose[d] the subject matter and/or substance of the privileged materials." Glickman noted that the Dottore Plaintiffs would "explore [their] options going forward."

{¶70} Based on this undisputed evidence, we conclude that the cognizable event for the allegation relating to the disclosure of documents to Cascarilla and his law firm for the preparation of the privilege log in connection with the subpoenas had occurred no

later than July 28, 2009, when Glickman informed Vorys that the Dottore Plaintiffs would "explore [their] options going forward." That statement, in the context of the other communications, demonstrates that the Dottore Plaintiffs not only knew of the disclosure of the documents, but also knew of their purported injury.

{¶71} Despite this evidence, the Dottore Plaintiffs argue that the statute of limitations has not begun to run on this malpractice claim because the Vorys Defendants have not yet fully disclosed what information the federal subpoena targeted and what of their privileged information was shared with Walter & Haverfield during Vorys's attempt to comply with the subpoena.

{¶72} But a well-supported motion for summary judgment should be denied only when there is a genuine issue as to a *material* fact. (Emphasis added.) Civ.R. 56(C). In this case, the cognizable event for the Walter & Haverfield situation occurred in the summer of 2009, when the Dottore Plaintiffs were informed that at least some of their information was shared. The Dottore Plaintiffs' knowledge of this injury at that time was sufficient to trigger the statute of limitations, and the unknown extent of that injury was not a *material* fact that precluded summary judgment on the statute-of-limitations defense.

### b. Accrual under the Representation Prong

{¶73} We now review when the statute of limitations was triggered based on the "representation prong."

**{¶74}** On this subject, the Vorys Defendants presented the affidavit of O'Malley, who averred as follows:

> From 2008 forward, Vorys' only representation of Mark Dottore, Dottore Companies, LLC, or Dottore Brothers, LLC * * * was its representation of one Plaintiff, Mark Dottore, in his capacity as receiver in a particular receivership styled *Variable Annuity Life Insurance Company v. 113 St. Clair Properties, et al, Cuyahoga County Court of Common Pleas*, Case Number CV 529384, and in the appeal filed in said litigation * * *. All other representations of the Plaintiffs concluded before 2008 and final bills related to the matters were sent to Plaintiffs before 2008.

**{¶75}** The Dottore Plaintiffs argue that Mark Dottore's affidavit contradicted O'Malley's statement. Dottore averred that the "plaintiffs continued to call the Vorys Defendants for legal advice on various matters" after the disclosure of their information to both PNC and Walter & Haverfield and that the plaintiffs "were last billed on November 5, 2010." But Dottore's statement that the Dottore Plaintiffs continued "to call" the Vorys attorneys for legal advice, without reference to any specific matters and without a statement that any advice was actually given, does not sufficiently contradict O'Malley's statement that the attorney-client relationship on all matters with Dottore as an individual and the two companies that he was associated with had been terminated by the end of 2007.

**{¶76}** The Dottore Plaintiffs also argue that the amended complaint asserted claims regarding the Vorys law firm's fraudulent billing, including the fraudulent bill issued by the law firm as recent as November 5, 2010, for representation in the *Variable Annuity* matter. Relatedly, they argue that the complaint contains a claim by the Dottore Plaintiffs for malpractice based on the production of the *Variable Annuity* documents to

Walter & Haverfield and the failure to notify the Dottore Plaintiffs of the request. The trial court rejected this argument and held that the complaint did not assert any malpractice claims involving the Vorys law firm's representation of the Dottore Plaintiffs in the *Variable Annuity* case. We agree.

**{¶77}** The Dottore Plaintiffs fail to recognize the distinction between Vorys providing legal representation to the receivership estate and Vorys providing legal representation to Dottore as the receiver. The trial court in the *Variable Annuity* case had appointed Dottore as a receiver of the property foreclosed upon in that case. Dottore, as receiver, hired Vorys to represent the receivership, not him.

**{¶78}** Because the complaint does not assert malpractice claims by the receivership estate against the law firm, and the evidence demonstrates that the Vorys law firm in the *Variable Annuity* matter only provided representation to the receivership estate and not to Dottore individually, we conclude that the attorney-client relationship for the relevant matters had ended by 2008.

**{¶79}** As a result, we determine that the accrual date of the malpractice action is governed by the date of the cognizable event, which occurred on July 28, 2009, almost seven months after the termination of the attorney-client relationship between the Dottore Plaintiffs and the Vorys Defendants for the relevant matters.

### c. Tolling Arguments

**{¶80}** The Dottore Plaintiffs present several arguments that seek to delay the accrual of their legal-malpractice claims. First, they argue that they had no reason to

discover O'Malley's malpractice in misrepresenting the *Zimmie* standard until the Vorys Defendants raised the statute of limitations in this lawsuit, and that the harm from that malpractice did not occur until the trial court granted the summary judgment motion based on the statute-of-limitations defense.

{¶81} The Vorys Defendants argue that the Dottore Plaintiffs waived this "discovery rule" argument by not raising it below, and that, even if it was not waived, it is meritless. They cite the undisputed evidence that the Dottore Plaintiffs were represented by independent counsel in the summer of 2009, after notice of the federal grand jury subpoena, and that independent counsel had warned the Vorys's firm in July 2009 that the Dottore Plaintiffs "w[ould] explore [their] options going forward." We agree that under these facts, where the Dottore Plaintiffs had retained independent counsel in the summer of 2009, the cognizable event did not occur when the Vorys Defendants raised the statute-of-limitations defense or when the court granted summary judgment on that basis, but when the Dottore Plaintiffs hired independent counsel to "explore" their options. No reasonable person could conclude that O'Malley's comments concerning the statute of limitations caused the Dottore Plaintiffs to delay in filing a malpractice action where the Dottore Plaintiffs had been represented by independent counsel.

{¶82} Next, the Dottore Plaintiffs maintain that the express agreement to follow the "specific confidentiality protocols" agreed to as part of the Parobek Settlement was a particularly defined undertaking that continues as long as Vorys holds the Dottore Plaintiffs' files. They note that Vorys failed to present any evidence to demonstrate that

this part of the representation ended, and that the record demonstrates that it has not ended because Vorys submitted documents in this case culled from the Dottore Plaintiffs' files that Vorys maintains under this agreement.

{¶83} We have already held that Calabrese's letter could not be considered as a special confidentiality protocol contract because Calabrese merely reassured Dottore that Vorys would not disclose privileged information — a duty already owed by virtue of the attorney-client relationship. Thus, the scope of the representation was not extended by the agreement.

{¶84} Further, the Dottore Plaintiffs conceded below that the retention of client files does not ordinarily toll the statute of limitations for a malpractice action. *See Chambers v. Melling, Harding, Schuman, and Montello*, 8th Dist. Cuyahoga No. 85045, 2005-Ohio-2456, ¶ 19. Thus, under these circumstances, we hold that Vorys's maintenance of any Dottore Plaintiffs' files did not toll the statute of limitations.

{¶85} In conclusion, we hold that the malpractice cause of action accrued on July 28, 2009, and therefore the Dottore Plaintiffs' commencement of the action in November 2010, occurred outside of the one-year statute of limitations for malpractice actions. Accordingly, the trial court did not err by determining that the statute of limitations on the malpractice claims set forth in the complaint had expired before the Dottore Plaintiffs filed the complaint.

### 4. Civ.R. 56(F) Motion to Conduct Additional Discovery

{¶86} Alternatively, the Dottore Plaintiffs contend that additional discovery was necessary to oppose the summary judgment motions, and in their tenth assignment of error, they argue that the trial court erred by denying their motion under Civ.R. 56(F) to conduct that additional discovery.

{¶87} Civ.R. 56(F) permits a court to allow a party additional discovery before having to oppose a motion for summary judgment "should it appear from the affidavits of [the party] that the party cannot for sufficient reasons stated present facts by affidavit essential to justify the party's opposition." The decision to grant or deny a Civ.R. 56(F) is within the discretion of the trial court, and "that discretion should be exercised liberally in favor of a non-moving party who proposes any reasonable interval for the production of those materials." *Whiteleather v. Yosowitz*, 10 Ohio App.3d 272, 276, 461 N.E.2d 1331 (8th Dist.1983).

{¶88} In this case, the Dottore Plaintiffs' attorney, Brian D. Spitz, submitted his own affidavit in support of additional discovery. Spitz averred that discovery was needed to determine several facts relevant to the statute of limitations, including determining when the last overt act in furtherance of the conspiracy occurred, "identifying what particular matters are reflected on the bills submitted to Plaintiffs by Vorys," "to further confirm that the actions of the Vorys Defendants were taken for their own personal gain and benefit," to determine the exact date and reason that Calabrese went on a leave of absence, and "to determine when and how" the Vorys Defendants "transferred their clients' files to Walter & Haverfield."

{¶89} In ruling on the Civ.R. 56(F) motion, the trial court found that the Dottore Plaintiffs already had the information to oppose the motion because they knew when they had become aware of the alleged tortious conduct and when their attorney-client relationship with Vorys for any specific undertakings had ended. The court noted that, despite having this information, the Dottore Plaintiffs had failed to offer that information in an affidavit to oppose summary judgment based on the statute-of-limitations defense. Thus, the trial court concluded that there was no reason to believe that the additional discovery sought would reveal evidence creating a genuine issue of material fact on any of the matters supporting the motions for summary judgment. The trial court also found that the motion was deficient because it was only supported by counsel's affidavit, and not the affidavit of a "party opposing the motion for summary judgment."

{¶90} We cannot say that the trial court abused its discretion in denying the Civ.R. 56(F) motion. The record supports the trial court's finding that the Dottore Plaintiffs were seeking information that was not relevant to the statute-of-limitations defense, and that they already had access to the information they claimed was necessary to rebut the summary judgment motions. For this reason, we find that the trial court did not abuse its discretion in denying the Civ.R. 56(F) motion. Because we have upheld the trial court's denial of the motion on this basis, we decline to address whether the failure to submit the "party's" affidavit was fatal to the motion.

**{¶91}** In light of our analysis of the Civ.R. 56 issues, we hold that the trial court did not err by granting summary judgment to the Vorys Defendants, including Calabrese, on the first seven counts of the amended complaint.

### B. Judgment on the Pleadings for the Vorys Defendants (without Calabrese)

**{¶92}** The Dottore Plaintiffs' first and second assignments of error challenge the trial court's grant of judgment on the pleadings to Vorys and its attorneys O'Malley, Parobek, Lonardo, and Hardymon on the RICO and spoliation claims. These claims were added in the amended complaint. Vorys's and its attorneys' motion for judgment on the pleadings tested the sufficiency of the allegations in the complaint with respect to those claims.

**{¶93}** Because these assignments of error arise from the grant of a motion for judgment on the pleadings, we apply a de novo standard of review. *Perrysburg Twp. v. Rossford,* 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. Further, because the motion was based on the defense of failure to state a claim upon which relief could be granted, we apply the standard for analyzing a motion to dismiss under Civ.R. 12(B)(6). *Pinkerton v. Thompson*, 174 Ohio App.3d 229, 236, 2007-Ohio-6546, 881 N.E.2d 880 (9th Dist.); *Black v. Coats*, 8th Dist. Cuyahoga No. 85067, 2005-Ohio-2460, ¶ 6.

**{¶94}** Accordingly, we must accept as true all the material factual allegations of the complaint with respect to the RICO and spoliation claims and construe any inferences to be drawn from those allegations in favor of the Dottore Plaintiffs, the nonmoving party. *Brown v. Carlton Harley-Davison, Inc.*, 8th Dist. Cuyahoga No. 99761,

2013-Ohio-4047, ¶ 12, citing *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 104, 661 N.E.2d 218 (8th Dist.1995).

**{¶95}** As this court recently stated in *Brown*, the Ohio Supreme Court has adopted the following test for determining whether to dismiss a complaint for failure to state a claim: " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975), quoting *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.E.2d 80 (1957), *overruled in part* by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see Volbers-Klarich v. Middletown Mgmt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 12.

## 1. RICO Claim

**{¶96}** The Dottore Plaintiffs focus on the dismissal of the RICO claim in their first assignment of error. This claim is based on a federal statute that affords a civil remedy to a party who is injured by certain types of unlawful activity. The complaint purports to set forth a RICO claim under 18 U.S.C. 1962(c), which provides as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**{¶97}** A violation of 18 U.S.C. 1962(c) requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). A plaintiff must allege each element to properly state a claim and must have suffered an injury in his business or property by the violating conduct to have standing to bring that claim. *Id.*

**{¶98}** "Racketeering activity" is defined in the RICO act as "any act or threat involving" specified state-law crimes and any "act" indictable under specified federal statutes. 18 U.S.C. 1961(1). A "pattern of racketeering activity" requires at least two acts of "racketeering activity" within a ten-year period. 18 U.S.C. 1961(5). Those acts must be related and they must "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

**{¶99}** The Dottore Plaintiffs' RICO claim alleged that Vorys was the "enterprise," that Vorys and its "attorneys" were the defendant "persons," and that Vorys's attorneys had committed the predicate acts of bribery of "Cuyahoga County officials" in violation of Ohio law (R.C. 2921.02), telecommunications fraud in violation of Ohio law (R.C. 2913.05) in connection with electronically-submitted invoices, and federal mail fraud in connection with invoices submitted by "U.S. mail" (18 U.S.C. 1341). In support of their motion for judgment on the pleadings, Vorys and its attorneys argued in part that the Dottore Plaintiffs had failed to plead qualifying predicate acts that would support a pattern of racketeering activity.

{¶100} The trial court first determined that telecommunications fraud under Ohio law did not qualify as a predicate act for a civil RICO claim. The court then found that, while the acts of bribery as defined under Ohio law and federal mail fraud could be qualifying predicate acts, the Dottore Plaintiffs had failed to adequately plead federal mail fraud as a predicate act with the particularity required by Civ.R. 9(B). Finally, the court applied the "plausibility standard" that governs federal pleadings, *see Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937, 173 L.Ed.2d 868, and found that the bribery allegations and the RICO claim as a whole failed "for want of plausibility." In reviewing the sufficiency of the complaint, the trial court expressly stated that it was only considering the allegations in paragraphs one through 216, and therefore disregarded the allegations in paragraphs 216 through 235.

{¶101} On appeal, the Dottore Plaintiffs challenge the trial court's failure to consider the entirety of the allegations, its finding that mail fraud was not adequately pleaded, and its application of the plausibility standard to test the sufficiency of the bribery allegations and the RICO scheme. Although we find some error in the trial court's reasoning, we ultimately concur with the trial court's conclusion that the RICO allegations were insufficient to state a claim for relief under the RICO statute.

### a. Mail Fraud

{¶102} The elements of mail fraud under 18 U.S.C. 1341 are (1) a scheme or artifice to defraud; (2) use of the mails in furtherance of the scheme; and (3) intent to deprive a victim of money or property. *United State v. Turner*, 465 F.3d 667, 680 (6th

Cir.2006). Like the common-law action that the mail fraud statute is based on, the scheme to defraud must include the "misrepresentation or concealment of a material fact." But the common-law requirements of "justifiable reliance" and "damages" do not apply. *Neder v. United States*, 527 U.S. 1, 24-25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).

{¶103} The trial court held that mail fraud must be pleaded with particularity and that the allegations failed under that standard, citing the following defects: (1) the failure to allege an intent to deceive, (2) the failure to identify "a single time entry on a single bill" that the plaintiffs considered to be fraudulent, (3) the failure to identify which plaintiff was the purported victim of the fraud and which defendant lawyers perpetrated the fraud, and (4) the failure to allege specific dates for the mail fraud.

{¶104} We first address the Dottore Plaintiffs' argument that the trial court erred when it refused to consider the allegations in paragraphs 217 through 235 of the complaint in evaluating the RICO claims. We agree with the Dottore Plaintiffs that the trial court erred by not considering those paragraphs.

{¶105} The trial court narrowly interpreted the language of paragraph 216, which provides that "[t]he Vorys Defendants' fraudulent and criminal activity, based on the predicate acts above, constitute a pattern of corrupt activity." This paragraph is found under the label of "Count X: Violation of the Racketeer Influenced and Corrupt Organizations Act." Count X begins with paragraph 212 and ends with paragraph 235. Paragraph 216 follows conclusory and boilerplate language asserting that the Vorys's

attorneys had committed "bribery," "telecommunications fraud," and "mail fraud" — the predicate acts. Paragraph 217 provides that the "Vorys Defendants' pattern of corrupt activity has and will continue and poses a threat of future criminal activity by the Vorys Defendants based on its [sic] ongoing attempts to continue such activities, including fraudulent billing and attempts to collect on such billing." Paragraphs 218 through 233 refer to the continued "fraudulent billing and attempts to collect on such billing." Paragraphs 234 and 235 address proximate cause and damages.

{¶106} Although not artfully pleaded, it is clear enough under these circumstances that the reference to the "predicate acts" in paragraph 216 was not intended to limit the court's consideration of additional facts to support the claim that were set forth in paragraphs 217 through 235 and under the same "count." The trial court's interpretation to the contrary was erroneous, and falls afoul of the rule that all pleadings, including complaints, "shall be so construed as to do substantial justice," Civ.R. 8(F), and that, in reviewing a motion to dismiss for the failure to state a claim, the court must review all the allegations in the complaint. *See Fahnbulleh v. Strahan*, 73 Ohio St.3d 666, 667, 635 N.E.2d 1186 (1995).

{¶107} Next the Dottore Plaintiffs argue that the particularity requirements of Civ.R. 9(B) do not apply to their allegations of mail fraud. This argument is not supported by the law.

{¶108} The federal mail fraud statute involves an allegation of "fraud." *See Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 403-404 (6th Cir.2012).

Civ.R. 9(B) provides that fraud claims must be pleaded with particularity. Thus, the heightened pleading requirements of Civ.R. 9(B) apply to a mail fraud claim. As a result, the complaint must contain factual allegations that tend to show each element of the fraud claim. *Sutton Funding, L.L.C. v. Herres*, 188 Ohio App.3d 686, 2010-Ohio-3645, 936 N.E.2d 574, ¶ 50 (2d Dist.).

{¶109} After reviewing the allegations of the complaint, including the paragraphs ignored by the trial court, we determine that the Dottore Plaintiffs failed to plead the mail fraud claim with particularity.

{¶110} The Dottore Plaintiffs' mail fraud allegations all relate to the "Vorys Defendants" purportedly sending inflated bills by mail. The operative allegations in the complaint referred generally to multiple acts of "intentional" "excessive" "bill[ing]," but there was no reference to any specific dates of allegedly fraudulent invoicing except for the November 5, 2010 invoice related to the *Variable Annuity* case. Further, the Dottore Plaintiffs failed to identify which of them was the target of the fraud and by which lawyer, and how the billing was materially fraudulent — i.e., what legal work was performed and what legal work "was not actually done." Because of the lack of particularity, the allegations were not sufficient to set forth the predicate act of mail fraud.

#### b. Bribery under R.C. 2921.02

{¶111} The complaint states that the "Vorys Attorneys" violated Ohio's bribery statute, R.C. 2921.02. The Dottore Plaintiffs did not indicate which subsection of the

bribery statute was violated, but we assume that the allegations were aimed at stating a violation of R.C. 2921.02(A). Under this subsection, bribery is committed when a

> person, with purpose to corrupt a public servant or party official, or improperly influence a public servant or party official with respect to the discharge of the public servant's or party official's duty, whether before or after the public servant or party official is elected, appointed, qualified, employed, summoned, or sworn, shall promise, offer, or give any valuable thing or valuable benefit.

{¶112} The Dottore Plaintiffs were not required to plead these operative facts with particularity, although one could argue that a claim of bribery, much like claims of fraud or of negligent hiring against a religious institution, involves an issue that supports the specificity requirement "to protect defendants from unfounded charges of wrongdoing that may injure their reputations." *Byrd v. Faber*, 57 Ohio St.3d 56, 61, 565 N.E.2d 584 (1991). Instead, the bribery allegations were subject to the minimal "notice pleading" requirements of Civ.R. 8(A).

{¶113} But this "notice pleading" requirement is not meaningless. The pleading must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Civ.R. 8(A). Further, the party asserting a claim must give sufficient operative facts to provide fair notice to the defender of the claim. *See Fancher v. Fancher*, 8 Ohio App.3d 79, 82-83, 455 N.E.2d 1344 (1st Dist.1982); *DeVore v. Mut. of Omaha Ins. Co.*, 32 Ohio App.2d 36, 38, 288 N.E.2d 202 (7th Dist.1972).

{¶114} At a minimum, the plaintiff must articulate the operative grounds of the claim. In the context of a bribery claim, the short and plain statement must include an allegation that the defendant gave or offered a benefit to a public servant or party official

with purpose to "corrupt" or "improperly influence" the public servant or party official in the performance of that individual's "duty."

{¶115} After reviewing the allegations of the complaint de novo, we hold that the Dottore Plaintiffs' bribery allegations fail because there was no allegation that the money was offered to corrupt or improperly influence Dimora or Jones with respect to his "duty."

{¶116} The complaint states that the "Vorys Defendants sought to improperly influence matters that they were involved in." But this vague allegation falls short of presenting the missing elements of bribery: the purposeful corruption or improper influence of a public servant or party official with respect to the discharge of the public servant's or party official's duty element of bribery. The complaint does not even identify the position held by Dimora or Jones or their duties. This general type of information would be public and available to the Dottore Plaintiffs, and thus the omission was not excusable. After reviewing the allegations, it appears beyond a doubt that the Dottore Plaintiffs can prove no facts in support of their claim that would establish a violation of the bribery statute.

{¶117} The trial court, too, was troubled by the absence of an alleged purpose and, as a result, concluded that the bribery allegations did not meet the plausibility standard. We, conversely, hold that the Dottore Plaintiffs could prove no possible facts in support of their bribery claim absent allegations encompassing the missing elements that are required to establish a violation of the bribery statute.

**{¶118}** Because the Dottore Plaintiffs failed to plead sufficient facts to set forth an allegation under any predicate act, they failed state a claim for relief under 18 U.S.C. 1962(c).

### c. Plausibility

**{¶119}** The trial court, unlike this court, found that the Dottore Plaintiffs had adequately pleaded bribery as a predicate act. The court concluded, however, that the RICO claim as a whole "fail[ed] for want of plausibility." The trial court extracted this plausibility standard from *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937, 173 L.Ed.2d 868. In *Iqbal*, the United States Supreme Court explained the standard under Fed.R.Civ.P. 8(a)(2) for evaluating the sufficiency of claims in light of the court's decision in *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955, 167 L.Ed. 929, holding that the rule requires sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." The Dottore Plaintiffs argue that the plausibility standard contradicts Ohio Supreme Court precedent holding that a "complaint should not be dismissed * * * if the allegations provide for relief on any possible theory." *Fahnbulleh*, 73 Ohio St.3d at 667, 653 N.E.2d 1186.

**{¶120}** The Vorys Defendants argue that this court has adopted the plausibility standard. They cite *Williams v. Ohio Edison*, 8th Dist. Cuyahoga No. 92840, 2009-Ohio-5702, ¶ 15, and *Gallo v. Westfield Natl. Ins. Co.*, 8th Dist. Cuyahoga No. 91893, 2009-Ohio-1094, ¶ 9.

**{¶121}** This court has recited the plausibility standard in some cases. *See, e.g., Williams, supra*; *Gallo, supra*; *Snowville Subdivision Joint Venture Phase I v. Home S. & L. of Youngstown*, 8th Dist. Cuyahoga No. 96675, 2012-Ohio-1342, ¶ 33; *Cleveland v. JP Morgan Chase Bank, N.A.*, 8th Dist. Cuyahoga No. 98656, 2013-Ohio-1035, ¶ 11 and 20; *Fink v. Twentieth Century Homes, Inc.*, 8th Dist. Cuyahoga No. 94519, 2010-Ohio-5486, ¶ 24; *Parsons v. Greater Cleveland Regional Transit Auth.*, 8th Dist. Cuyahoga No. 93523, 2010-Ohio-266, ¶ 11. Yet this court more recently has cited *O'Brien* and its literal "no set of facts" standard, *Brown*, 8th Dist. Cuyahoga No. 99761, 2013-Ohio-4047, ¶ 13, which is inconsistent with the "plausibility" standard. *See Twombly* at 562-563; *Sacksteder v. Senney*, 2d Dist. Montgomery No. 24993, 2012-Ohio-4452, ¶ 43-46.

**{¶122}** We have determined in our de novo review that the Dottore Plaintiffs failed to allege sufficient predicate acts to adequately state even a "possible" claim for relief under RICO. Under these circumstances, we decline to address the Dottore Plaintiffs' argument that the trial court erred by reviewing the allegations under the stricter "plausibility standard" set forth in *Twombly* and its progeny.

**{¶123}** Accordingly, because the Dottore Plaintiffs failed to sufficiently state a claim for a violation of the RICO statute, the trial court did not err when it granted the motion of Vorys and its attorneys for judgment on the pleadings with respect to that claim.

## 2. Spoliation Claim

{¶124} The trial court dismissed the spoliation claim after determining that none of the other causes of actions against the Vorys Defendants could proceed. In their second assignment of error, the Dottore Plaintiffs argue that they should be allowed to go forward on the spoliation claim if this court reverses the trial court's disposition with respect to their other claims. We are affirming the trial court's grant of summary judgment for the Vorys Defendants on the legal-malpractice, breach-of-contract, breach-of-fiduciary-duty, promissory-estoppel, breach-of-confidentiality, fraud, and civil-conspiracy claims and the judgment on the pleadings for the Vorys Defendants with respect to the RICO claim. Because this court is not reversing the trial court's disposition with respect to the other claims, we determine that the assignment of error is meritless.

## C. Declaratory-Judgment Counterclaim

{¶125} In their eleventh assignment of error, the Dottore Plaintiffs argue that the trial court erred by denying their motion to dismiss the declaratory judgment counterclaim filed by Vorys, O'Malley, Parobek, Lonardo, and Hardymon. But the record demonstrates that the trial court did not rule on that motion, and that the counterclaimants subsequently dismissed the claim after the trial court granted the counterclaimants' motion for summary judgment based on the statute-of-limitations defense. Because the assignment of error is not supported by the record, we overrule it.

## D. Claims against PNC and Duffy

**{¶126}** The trial court granted PNC's and Duffy's motion to dismiss the spoliation and conspiracy claims after ruling against the Dottore Plaintiffs with respect to the Vorys Defendants' motions for summary judgment and judgment on the pleadings. The trial court found that the Dottore Plaintiffs had failed to allege any proper damages to recover under the civil-conspiracy claim and that the civil- conspiracy claim could not go forward where the related claims were time barred. Specifically, the trial court reasoned that the Dottore Plaintiffs could not prove an essential element of the conspiracy claim — that Vorys had committed a wrongful act independent of the conspiracy — because the malpractice claim was time barred.

**{¶127}** The trial court found that dismissal of the spoliation claim against PNC and Duffy was appropriate where all of the other claims had been dismissed, leaving "no claim the bank defendants could have disrupted by the destruction of evidence."

**{¶128}** As noted by PNC and Duffy, the Dottore Plaintiffs do not directly assign as error the trial court's grant of their motion to dismiss or the trial court's reasoning for granting it. The Dottore Plaintiffs do argue in their reply brief that if "any claim arising from the Parobek Situation remains, so should PNC [and Duffy] for their entrance in the conspiracy." Although not required to do so, *see* App.R. 12(A) and 16, we construe this language to state an assignment of error challenging the judgment for PNC and Duffy on the conspiracy and spoliation claims.

**{¶129}** However, we have upheld the trial court's decision dismissing and barring the other "claims arising from the Parobek situation," and the Dottore Plaintiffs do not

challenge this part of the judgment on any other grounds. Therefore, we affirm the trial court's dismissal of PNC and Duffy from the lawsuit.

## E. RICO and Spoliation Claims Against Calabrese

{¶130} The trial court granted Calabrese's motion for summary judgment on all claims, including the RICO and spoliation claims. The primary basis for Calabrese's argument in his summary judgment motion was that the underlying acts upon which both the spoliation and RICO claims were based occurred after he was no longer affiliated with Vorys, and therefore he could not have committed any of the alleged underlying acts. As noted by Calabrese, the Dottore Plaintiffs do not challenge the trial court's grant of summary judgment in his favor on these claims, nor do they address the specific arguments that Calabrese made in his summary judgment motion on these claims. Under these circumstances, we affirm the trial court's grant of summary judgment to Calabrese on these claims.

## III. Conclusion

{¶131} Based on our resolution of the issues, we overrule the assignments error. Accordingly, the judgment of the trial court is affirmed.

It is ordered that appellees recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

PENELOPE R. CUNNINGHAM, PRESIDING JUDGE[*]

PATRICK DINKELACKER, J.,[*] CONCURS;
PATRICK FISCHER, J.,[*] CONCURS IN PART (WITH SEPARATE OPINION)

PATRICK FISCHER, J., CONCURRING OPINION:

{¶132} I concur wholeheartedly with the opinion above. I write separately only regarding Count X of the amended complaint.

{¶133} In the paragraphs of that count, the Dottore Plaintiffs failed to properly allege the so-called "predicate acts," the so-called "corrupt activity," and the so-called "enterprise," all elements essential to a RICO violation. The allegations with respect to Count X, which were added later in the case by amendment of the complaint, were so deficient that I question whether the Dottore Plaintiffs and their attorney may have violated Civ.R. 11 and R.C. 2323.51 by presenting them.

{¶134} As we have held, this case involves nothing more than alleged professional negligence. The Dottore Plaintiffs' new theory presented in Count X is an exploitation of the RICO statute, which was designed to combat organized crime. The abuse of the civil RICO cause of action by litigants seeking to recover treble damages has not gone

[*]SITTING BY ASSIGNMENT: Judges Penelope R. Cunningham, Patrick Dinkelacker, and Patrick Fischer, of the First District Court of Appeals.

unnoticed, *see, e.g.,* Nicholas L. Nybo, Note and Comment: *A Three-Ring Circus: The Exploitation of Civil RICO, How Treble Damages Cause It and Whether Rule 11 Can Remedy the Abuse*, 18 Roger Williams U.L.Rev. 19 (2013); Mitchell, Cunningham and Lentz, *Returning RICO to Racketeers: Corporations Cannot Constitute an Associated-in-Fact Enterprise Under 18 U.S.C. § 1961(4)*, 13 Fordham J.Corp. & Fin.L. 1 (2008), and, in my opinion, has spiraled out of control and needs to be curtailed.

**{¶135}** Therefore, in addition to upholding the dismissal and the summary judgment for the Vorys Defendants, I would remand the cause to the trial court for further proceedings to determine whether sanctions under Civ.R. 11 and R.C. 2323.51, and relating only to Count X, should be entered and, if so, the extent of any such sanctions.